Citation Nr: 1536784 
Decision Date: 08/27/15 Archive Date: 09/04/15

DOCKET NO. 10-46 248 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Anchorage, Alaska


THE ISSUE

Evaluation of lumbar spine degenerative disc and joint disease, rated as 10 percent disabling.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

A. Rocktashel, Associate Counsel


INTRODUCTION

The Veteran served on active duty from December 1971 to March 1981, February 1985 to February 1986, and July 1986 to April 1991.

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from a June 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Anchorage, Alaska.

In June 2011, the Veteran presented testimony during a Board hearing before the undersigned Veterans Law Judge at the RO. A transcript of the hearing is associated with the claims file. 

In February 2012, the Board issued a decision denying the entitlement to an initial rating in excess of 10 percent for lumbar spine degenerative disc and joint disease, and dismissing the claims of entitlement to service connection for a respiratory disability due to exposure to asbestos, entitlement to an initial rating in excess of 20 percent for cervical spine degenerative joint disease and spondylosis, and entitlement to an initial rating in excess of 10 percent for temporomandibular joint disorder. Pursuant to a settlement agreement in the case of National Org. of Veterans' Advocates, Inc. v. Secretary of Veterans Affairs, 725 F. 3d 1312 (Fed. Cir. 2013), the Board's decision was identified as having been potentially affected by an invalidated rule related to the duties of the Veterans Law Judge that conducted the June 2011 hearing. In order to remedy any such potential error, the Board sent the Veteran a letter notifying him of an opportunity to receive a new hearing and/or a new decision from the Board. Subsequently, the Veteran requested to only have the prior decision vacated and a new one issued in its place.

In April 2014, the Board issued a decision again denying the claim of entitlement to an initial rating in excess of 10 percent for lumbar spine degenerative disc and joint disease, and dismissing the claims of entitlement to service connection for a respiratory disability due to exposure to asbestos, entitlement to an initial rating in excess of 20 percent for cervical spine degenerative joint disease and spondylosis, and entitlement to an initial rating in excess of 10 percent for temporomandibular joint disorder.

The Veteran appealed the Board's decision to the Court of Appeals for Veterans Claims (Court). In October 2014, the Court granted a Joint Motion for Partial Remand (JMPR) filed on behalf of the parties, vacating that part of the Board's April 2014 decision pertaining to the issue of entitlement to an initial rating in excess of 10 percent for lumbar spine degenerative disc and joint disease.

Pursuant to the Court remand, in February 2015, the Board remanded the case for further evidentiary development. The requested development was completed, and the case has now been returned to the Board for further appellate action.


FINDING OF FACT

Lumbar spine degenerative disc and joint disease have been primarily manifested by complaints of pain and by abnormal kyphosis. The functional equivalent of limitation of forward flexion of the thoracolumbar spine is better than 30 degrees and the functional equivalent of the combined range of motion is better than 120 degrees. Ankylosis of the entire thoracolumbar spine, neurologic impairment, and incapacitating episodes as defined by VA have not been demonstrated.


CONCLUSION OF LAW

The criteria for a 20 percent rating, but no higher, for lumbar spine degenerative disc and joint disease have been met. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 4.31, 4.40, 4.45, 4.71a, Diagnostic Code 5242 (2015).





REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). Proper VCAA notice must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 C.F.R. § 3.159(b)(1). VCAA notice requirements apply to all five elements of a service connection claim: (1) veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 484-86 (2006), aff'd, 483 F.3d 1311 (Fed. Cir. 2007). VCAA notice should be provided to a claimant before the initial unfavorable agency of original jurisdiction decision on a claim. Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006). 

The rating decision on appeal arises from the Veteran's disagreement with the initial rating assigned for his low back disability after the grant of service connection. The courts have held, and VA's General Counsel has agreed, that where an underlying claim for service connection has been granted and there is disagreement as to "downstream" questions, the claim has been substantiated and there is no need to provide additional VCAA notice or prejudice from absent VCAA notice. Hartman v. Nicholson, 483 F.3d 1311, 1314-15 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112, 116-17 (2007); VAOPGCPREC 8-2003 (2003). 

The CAVC has elaborated that filing a notice of disagreement begins the appellate process, and any remaining concerns regarding evidence necessary to establish a more favorable decision with respect to downstream elements (such as an effective date) are appropriately addressed under the notice provisions of 38 U.S.C.A. §§ 5104 and 7105 (West 2014). Goodwin v. Peake, 22 Vet. App. 128, 137 (2008). Where a claim has been substantiated after the enactment of the VCAA, the appellant bears the burden of demonstrating any prejudice from defective VCAA notice with respect to the downstream elements. Id. There has been no allegation of such error in this case.

Based on the foregoing, adequate notice was provided to the Veteran prior to the transfer and certification of his case to the Board and complied with the requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b). Moreover, it is again noted that in the June 2011 hearing before the undersigned, the presiding Veterans Law Judge clarified the issue on appeal and identified potentially relevant additional evidence that the Veteran may submit in support of his claim. (Transcript (T.) at page (pg.) 2, 5.) These actions by the undersigned supplement VA's compliance with the VCAA.

Next, VA has a duty to assist the Veteran in the development of the claim. To that end, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2015); see Golz v. Shinseki, 590 F.3d 1317, 1320 (2010). Furthermore, "[t]he duty to assist is not boundless in its scope" and "not all medical records . . . must be sought-only those that are relevant to the [V]eteran's claim." Golz at 1320, 21. In this case, the Veteran's service treatment records have been obtained, as well as private treatment records. 

In the JMPR, the parties noted that the January 2010 VA examination was inadequate. Specifically, the JMPR pointed out that during his June 2011 Board hearing, the Veteran reported that his condition had quickly deteriorated for several months after having to stop treatment, and when he started getting pain he could not move and that walking became an issue. The parties agreed that these statements reflected a potential worsening of the disability since the previous examination, and that, therefore, a new VA examination was warranted.

Pursuant to the JMPR and the February 2015 Board remand, the Veteran was afforded a VA spine examination in March 2015. The March 2105 examination is adequate for evaluation purposes. This finding is based on the examination report showing a detailed and thorough physical examination and the solicitation by the VA examiner of information pertinent to the rating criteria. The examiner considered the Veteran's history and statements, and the examination report contained sufficient information to address the current severity of the Veteran's spine disability. The examiner substantially addressed the Board's remand directives regarding functional loss, ankylosis, and incapacitating episodes, and provided a reason for why an opinion on the issue of additional loss of range of motion would be speculation. Thus, the Board finds that the RO substantially complied with the Board's remand instructions. See Donnellan v. Shinseki, 24 Vet. App. 167, 176 (2010) ("It is substantial compliance, not absolute compliance, that is required" under Stegall v. West) (citing Dyment v. West, 13 Vet. App. 141, 146-47 (1999)).

For the foregoing reasons, the Board concludes that all reasonable efforts were made by VA to obtain evidence necessary to substantiate the claim on appeal. The evidence of record provides sufficient information to adequately evaluate the claim. All obtainable evidence identified by the Veteran relative to the claim has been obtained and associated with the claims file, and the Board is not aware of the existence of any additional relevant evidence which was not obtained. Therefore, no further assistance to the Veteran with the development of evidence is required. 38 U.S.C.A. § 5103A(a)(2); 38 C.F.R. § 3.159(d); see Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F.3d 1328 (Fed. Cir. 2006).

Ratings Principles

Disability evaluations are determined by evaluating the extent to which a Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the Schedule for Rating Disabilities (Rating Schedule). 38 U.S.C.A. § 1155; 38 C.F.R. §§ 4.1, 4.2, 4.10. Ratings shall be based as far as practicable, upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular evaluations are found to be inadequate, an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities may be assigned where the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1) (2015).

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet. App. 589, 594 (1991). Although the regulations require review of the recorded history of a disability by the adjudicator to ensure a more accurate evaluation, the regulations do not give past medical reports precedence over the current medical findings. Where an increase in the disability rating is at issue, the present level of a claimant's disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994).

The United States Court of Appeals for Veterans Claims has held that "staged" ratings are appropriate for any rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App 119 (1999). 

The evaluation of the same disability under various diagnoses is to be avoided. 38 C.F.R. § 4.14. However, separate evaluations for separate and distinct symptomatology may be assigned where none of the symptomatology justifying an evaluation under one diagnostic code is duplicative of or overlapping with the symptomatology justifying an evaluation under another diagnostic code. Esteban v. Brown, 6 Vet. App. 259, 262 (1994). Additionally, if two evaluations are potentially applicable, the higher evaluation is assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding a degree of disability is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in the parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. 38 C.F.R. § 4.40; DeLuca v. Brown, 8 Vet. App. 202, 205 (1995). It is essential that the examination on which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. Id. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervation, or other pathology, or it may be due to pain, supported by adequate pathology or evidenced by visible behavior of the claimant undertaking the motion. Id. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. Id. 

The factors involved in evaluating, and rating disabilities of the joints include weakened movement (due to muscle injury, disease or injury of peripheral nerves, divided or lengthened tendons, etc.); excess fatigability; incoordination (impaired ability to execute skilled movements smoothly); more movement than normal (from flail joint, resections, nonunion of fracture, relaxation of ligaments, etc.); less movement than normal (due to ankylosis, limitation or blocking, adhesions, tendon-tie-up, contracted scars, etc.); or pain on movement, swelling, deformity, or atrophy of disuse. 38 C.F.R. § 4.45.

In addition, the intent of the Rating Schedule is to recognize actually painful, unstable or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. This regulation also provides that the intent of the Rating Schedule is to recognize painful motion with joint or periarticular pathology as productive of disability, and that crepitation should be noted carefully as points of contact which are diseased.

Thus, when assessing the severity of a musculoskeletal disability that, as here, is at least partly rated on the basis of limitation of motion, VA must also consider the extent that the veteran may have additional functional impairment above and beyond the limitation of motion objectively demonstrated, such as during times when his symptoms are most prevalent ("flare-ups") due to the extent of his pain (and painful motion), weakness, premature or excess fatigability, and incoordination-assuming these factors are not already contemplated by the governing rating criteria. DeLuca v. Brown, 8 Vet. App. 202, 204-7 (1995).

The United States Court of Appeals of Veterans Claims has also held that VA's regulations pertaining to whether a compensable rating is warranted for pain (as shown by adequate pathology and evidenced by the visible behavior in undertaking motion), 38 C.F.R. §§ 4.40 and 4.59, apply regardless of whether the painful motion is related to arthritis. Burton v. Shinseki, 25 Vet. App. 1, 5 (2011).

In determining the disability evaluation, VA has a duty to acknowledge and consider all regulations that are potentially applicable based upon the assertions and issues raised in the record and to explain the reasons and bases for its conclusion. Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

In evaluating a claim, the Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1335 (2006). The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a); Layno v. Brown, 6 Vet. App. 465, 470 (1994) (providing that a Veteran is competent to report on that of which he or she has personal knowledge). 

If the evidence is competent, the Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007) (observing that once evidence is determined to be competent, the Board must determine whether such evidence is also credible). After determining the competency and credibility of evidence, the Board must then weigh its probative value. In this regard, the Board may properly consider internal inconsistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498, 511-12 (1995).

When all of the evidence is assembled, VA is then responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

Analysis 

The Veteran asserts that an evaluation in excess of 10 percent is warranted for his service-connected low back disability. In the June 2011 Board hearing, the Veteran alleged a worsening of the disability after discontinuing chiropractic treatment.

The Veteran's service-connected lumbar spine disability is evaluated under Diagnostic Code 5242. Diagnostic Code 5242 (degenerative arthritis of the spine) is evaluated under the General Rating Formula for Diseases and Injuries of the Spine. A 10 percent rating will be will be assigned for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees; or combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees, or muscle spasm, guarding, or localized tenderness not resulting in an abnormal gait or abnormal spinal contour. A 20 percent rating is assigned for forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees; or the combined range of motion of the thoracolumbar spine is not greater than 120 degrees; or muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. An evaluation of 40 percent is warranted for forward flexion of the thoracolumbar spine 30 degrees or less; or favorable ankylosis of the entire thoracolumbar spine. Any associated objective neurological abnormalities, including, but not limited to, bowel or bladder impairment, are separately rated under an appropriate diagnostic code. 38 C.F.R. § 4.71a, Diagnostic Code 5242, at Note (1) (2015).

Diagnostic Code 5242 references Diagnostic Code 5003. Under Diagnostic Code 5003, degenerative arthritis is rated based on limitation of motion of the affected joint. Under Diagnostic Code 5020, arthritis due to trauma, substantiated by X-ray findings, is rated as degenerative arthritis. 38 C.F.R. § 4.71a, Diagnostic Code 5010 (2015).

Alternatively, the Formula for Rating Intervertebral Disc Syndrome (IVDS) Based on Incapacitating Episodes provides that an evaluation of 10 percent is warranted for intervertebral disc syndrome with incapacitating episodes having a total duration of at least one week but less than 2 weeks during the past 12 months. An evaluation of 20 percent is warranted for intervertebral disc syndrome with incapacitating episodes having a total duration of at least 2 weeks but less than 4 weeks during the past 12 months. An evaluation of 40 percent is warranted for intervertebral disc syndrome with incapacitating episodes having a total duration of at least 4 weeks but less than 6 weeks during the past 12 months. Finally, an evaluation of 60 percent requires intervertebral disc syndrome with incapacitating episodes having a total duration of at least 6 weeks during the past 12 months. 38 C.F.R. § 4.71a, Diagnostic Code 5243.

In this case, on VA examination in January 2010, the Veteran reported that his usual occupation was that of a helicopter pilot, but that he had worked less than one year as a full-time computer technician. He indicated that he had lost three days of work in the past 12 months as a result of back pain.

The Veteran reported experiencing a mild, dull, aching, constant daily pain in his right lumbar paraspinal muscles that did not radiate. He reported symptoms of fatigue, decreased motion, stiffness, weakness, and pain. There were no flare-ups of spinal conditions. He rated the pain at level 3/10 that was aggravated with lifting to the level 7-8/10. He indicated that he experienced flare-ups once or twice a year. He denied any lower extremity paresthesias. 

The Veteran also denied experiencing urinary incontinence, urinary urgency, urinary frequency, fecal incontinence, obstipation, erectile dysfunction, numbness, paresthesias, foot or leg weakness, falls, or steadiness. He reported experiencing nocturia one time per night, which was unrelated to any claimed disability.

During the past 12 month period, the Veteran reported that there were no incapacitating episodes due to intervertebral disc syndrome, but that he had experienced one incapacitating episode of the thoracolumbar region, which lasted one day. He did not use any devices/aids and was able to walk 1/4 mile. 

On physical examination, inspection of the spine revealed a normal posture and spine symmetry. The examiner reported that the Veteran's gait was normal and that there were no abnormal spinal curvatures, including gibbus, kyphosis, list, lumbar flattening, scoliosis, reverse lordosis, or thoracolumbar ankylosis. With respect to objective abnormalities of thoracic sacrospinalis, the examiner reported that there was no spasm, atrophy, tenderness, or weakness. However, there was bilateral guarding and pain with motion. He had normal muscle tone with no muscle atrophy. Detailed sensory examination of the Veteran's lower extremities found normal sensation on both lower extremities. Detailed reflex examination of the Veteran's spine reflected normal reflexes.

Thoraco-lumbar spine active range of motion was as follows: flexion 0-90 degrees; extension 0-20 degrees; bilateral lateral flexion 0-30 degrees; and bilateral lateral rotation 0-30 degrees. There was objective evidence of pain on active range of motion. There was objective evidence of pain following repetitive motion. However, there were no additional limitations after three repetitions of range of motion. 

X-rays of the Veteran's lumbar spine showed that the Veteran had degenerative disc disease of the lumbar spine with no evidence of compression fracture.

With respect to the Veteran's activities of daily living, there was no effect on his chores, shopping, traveling, feeding, bathing, dressing, toileting, and grooming, and a mild effect on exercise, sports, recreation, and driving. 

At the June 2011 Board hearing, the Veteran asserted essentially that his condition has worsened. He reported that he had to call in sick from work a couple of times for a couple of days because of his back. On one occasion, he had an "incapacitating episode" in which he stayed home from work for three days, kept himself off his feet and took over-the-counter pain medication. He reported that pain makes it difficult to work as an IT specialist, for example, when he has to get underneath desks to perform repairs. The Veteran asserted that he uses a stool to tie his shoes because he cannot bend down. He reported having spasms occasionally, but less frequently than before. He denied being able to wrestle, play touch football, and drive for long distances. The Veteran admitted that he can bend over, however, he cannot keep doing it all day long.

A March 2015 VA examination was conducted. The examination report notes diagnoses of lumbar degenerative spondylosis and thoracic kyphosis. During the examination, the Veteran reported being seen by chiropractic, with some relief, but a few weeks later, he gets adjusted again. He reported that his back "goes out" at times and that he has back aches with intense pain with difficulty standing up straight and walking. At work, he carries heavy things such as computers, but there is a 30 pound lifting limit for all employees.

The Veteran reported having flare-ups 4 to 5 times per year where he has to get adjusted. The Veteran reported functional loss in the form of sometimes taking a day or two off from work. If he gets adjusted, he can go back to work. 

Range of motion testing revealed forward flexion of 0 to 80 degrees; extension of 0 to 20 degrees; bilateral lateral flexion of 0 to 30 degrees; and bilateral lateral rotation of 0 to 30 degrees. The examiner opined that the range of motion does not contribute to a functional loss. There was no pain noted on the examination. There was no evidence of pain with weight bearing. There was no objective evidence of localized tenderness or pain on palpation of the joints or associated soft tissue of the thoracolumbar spine.

After three repetitions, range of motion was: forward flexion of 0 to 70 degrees; extension of 0 to 20 degrees; bilateral lateral flexion of 0 to 30 degrees; and bilateral lateral rotation of 0 to 30 degrees. The examiner noted that the Veteran was not being examined immediately after repetitive use over time, but that the examination is medically consistent with the Veteran's statements describing functional loss with repetitive use over time. The examiner was unable to say without speculation whether pain, weakness, fatigability or incoordination significantly limit functional ability with repeated use over a period of time, because, as the examiner explained, she cannot give a range of motion without it being examined.

The examiner noted that the examination was not being conducted during a flare-up, but that the examination is medically consistent with the Veteran's statements describing functional loss during flare-ups. The examiner again was unable to state whether pain, weakness, fatigability or incoordination significantly limit functional ability with flare-ups, reasoning that she cannot give a range of motion without it being examined. There were no guarding or muscle spasms. Muscle strength testing was normal. There was no muscle atrophy. Deep tendon reflexes were normal. Sensation to light touch was normal. Straight leg raising test results were negative. There was no radicular pain and no other signs or symptoms due to radiculopathy. There was no ankylosis of the spine. There were no other neurologic abnormalities or findings related to a thoracolumbar spine (back) condition (such as bowel or bladder problems/pathologic reflexes). The examiner found IVDS not present.

The examiner noted the Veteran does not use any assistive devices. The examiner found, however, that the Veteran has mild thoracic kyphosis noted, with "no appreciable extension to lumbar [sic]." January 2010 imaging studies showing degenerative disc disease of the lumbar spine were noted. Finally, the examiner found that the Veteran's lumbar spine disability does not impact the Veteran's ability to work.

The Veteran submitted private medical records in support of his claim. A private medical report for treatment in March 2008 indicates a positive finding for kyphosis and tenderness of paravertebral muscles. Range of motion testing indicated forward flexion to 40 degrees; extension to 10 degrees; bilateral rotation to 45 degrees; and bilateral "side bending" to 30 degrees. 

Private chiropractic treatment records for the period of June and July 2009 are of record. The records indicate the Veteran was treated for neck and back pain with massage and chiropractic adjustment. In a June 2009 record the Veteran denied radiating pain. Range of motion examination revealed: flexion was 80 degrees (out of 90 degrees); extension was 20 degrees; bilateral lateral flexion was 30 degrees; bilateral rotation was 30 degrees. The Veteran experienced pain rated as 8/10.

After a review of the evidence of record, the Board finds that an evaluation of 20 percent is warranted for the entire appeal period. In March 2015 the VA examiner found thoracic kyphosis was present. This finding of kyphosis can no longer be disassociated with the March 2008 private medical examination positive finding of kyphosis. Giving the benefit of the doubt to the Veteran, kyphosis has been established for the entire appeal period.

A higher evaluation is not warranted, however, because the most probative evidence shows no ankylosis and it shows forward flexion of the thoracolumbar spine is better than 30 degrees. 

In this regard, the January 2010 VA examination showed forward flexion of the Veteran's thoracolumbar spine better than 60 degrees (here his flexion was 90 degrees, the combined range of motion of the thoracolumbar spine better than 120 degrees (here his combined range of motion was 230 degrees), no muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. 

June 2009 private chiropractic records present similar range of motion findings. The March 2008 private medical opinion, on the other hand, indicates a positive finding of kyphosis and forward flexion worse than 60 degrees (at 40 degrees). The Board finds that the probative value of this report is outweighed by the more detailed and specific findings of the VA medical examiner. The private chiropractic records further weigh against the claim and confirm the VA examiner's findings. These private chiropractic records are highly probative as they report treatment performed outside of the context of a claim for compensation.

The Board has also considered the Veteran's statements that his low back disability is worse than the rating that he currently receives. As a lay person, the Veteran is competent to attest to physical symptoms that he experiences, such as persistent low back pain. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). In that regard, the Veteran's statements are non-specific and fail to establish a greater degree of functional impairment. Here, the medical findings directly address the criteria under which the Veteran's low back disability is evaluated. We find the medical evidence to be far more probative of the degree of impairment than the Veteran's lay statements.

The Board has considered the Veteran's assertions of functional loss due to pain and flare-ups under DeLuca, supra. However, the preponderance of the evidence is against a finding of additional functional impairment comparable to an evaluation of 30 percent or higher. In that regard, the Veteran noted in the Board hearing that he can bend over, however, he cannot keep doing it all day long. Furthermore, although the March 2015 VA examiner could not assess the additional limitation of range of motion due to flare-ups, she noted that the examination was medically consistent with the Veteran's statements. Additionally, the 20 percent disability evaluation assigned herein contemplates a limitation of forward flexion better than 30 degrees and a combined range of motion better than 120 degrees. As the most probative evidence shows the Veteran's non-flare-up limitation of forward flexion is 80 degrees, and combined range of motion is 230 degrees, flare-ups would have to cause an additional 50 percent limitation of forward flexion for the next higher evaluation. The Board finds that given the number of flare-ups asserted by the Veteran, the disability picture more nearly approximates a 20 percent evaluation, than a higher evaluation.

Turning to other potentially applicable diagnostic codes, as instructed by Note (1) to the General Rating Formula for Disabilities of the Spine, associated objective neurological abnormalities should be rated separately under an appropriate Diagnostic Code. In this case, the record, as evidenced by the January 2010 and March 2015 VA examination reports as well as the Veteran's lay testimony, does not reflect that the Veteran has any neurological abnormalities as a result of his service-connected low back disability. As noted above, the Veteran denied experiencing any lower extremity paresthesia and his sensory examinations were normal.

The Board has also considered evaluating intervertebral disc syndrome (Diagnostic Code 5243) based upon incapacitating episodes. On this record, the January 2010 VA examination report shows that the Veteran was diagnosed as having degenerative disc disease. The examination report also shows that the Veteran reported that he had lost three days of work during the past 12 months due to his back pain. However, the examiner reported there were no incapacitating episodes due to intervertebral disc syndrome. Further, during his June 2011 hearing, the Veteran testified that he had stayed home for three days as a result of his back, but that he had not been prescribed bed rest and just stayed home, kept himself off of his feet, and took over the counter pain medication to try and get relaxed. (Transcript (T.) at page (pg.) 4.) The March 2015 examination report showed the Veteran reporting having flare-ups 4 to 5 times per year where he needs an adjustment, or he misses a day or two of work. The examiner found IVDS not to be present. 

In the absence of lay or objective evidence that shows that the Veteran's degenerative disc disease is manifested by incapacitating episodes requiring prescribed bed rest, the criteria for a higher evaluation under Diagnostic Code 5243 have not been met. Note (1) of 38 C.F.R. § 4.71a, Diagnostic Code 5243, provides that for the purposes of evaluations under Diagnostic Code 5243, an incapacitating episode is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician.

As to consideration of referral for an extraschedular rating, such consideration requires a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). The first question is whether the schedular rating adequately contemplates the Veteran's disability picture. Thun, 22 Vet. App. at 115. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. If the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, then the second inquiry is whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as governing norms. If the Veteran's disability picture meets the second inquiry, then the third step is to refer the case to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether an extraschedular rating is warranted. 

The discussion above reflects that the orthopedic and neurologic symptoms of the Veteran's lumbar spine degenerative disc and joint disease are fully contemplated by the applicable rating criteria. The reduction in range of motion and abnormal curvature of the lumbar spine are specifically accounted for under the criteria for rating disabilities of the spine, and the additional limitation on repetitive motion were specifically accounted for, and found to not warrant higher ratings, under 38 C.F.R. § 4.40, 4.45, 4.59, and DeLuca. In addition, the neurologic symptoms were considered as chronic neurologic manifestations under the former criteria and as associated objective neurologic abnormalities under the revised criteria, and resulted in a separate rating where warranted. Thus, consideration of whether the Veteran's disability picture exhibits other related factors such as those provided by the regulations as "governing norms" is not required. In any event, the Veteran indicated throughout the appeal period that he worked full time as a computer specialist. While he also indicated that he had missed approximately seven days of work in a year due to his lumbar pain, such a relatively short period of time does not reflect marked interference with employment. See 38 C.F.R. § 4.1 ("Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability"). Moreover, there is no evidence of frequent hospitalization, or that the Veteran's symptoms have otherwise rendered impractical the application of the regular schedular standards. Therefore, referral for consideration of an extraschedular rating for lumbar spine disability is not warranted. 38 C.F.R. § 3.321(b)(1).

Finally, the fact that the Veteran remains employed full time reflects that a TDIU claim has not been raised implicitly in connection with the claims for higher ratings herein. See Rice v. Shinseki, 22 Vet. App. 447, 453 (2009).

Therefore, resolving reasonable doubt in favor of the Veteran, a 20 percent evaluation is warranted. However, the preponderance of the evidence is against any higher rating or any additional separate compensable rating. The Board has been mindful of the "benefit-of-the-doubt" rule, but, in the case of an evaluation higher than 20 percent, there is not such an approximate balance of the positive evidence and the negative evidence to permit a more favorable determination. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).


ORDER

An evaluation of 20 percent, but no higher, for lumbar spine degenerative disc and joint disease is granted.





____________________________________________
H. N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs