http://www.va.gov/vetapp16/Files4/1630418.txt

Citation Nr: 1630418 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 11-25 180 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina

THE ISSUE

Entitlement to service connection for a back disability.

REPRESENTATION

Appellant represented by: The American Legion

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

A. Rocktashel, Associate Counsel

INTRODUCTION

The Veteran served on active duty from May 1996 to October 2005. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina. 

The Veteran testified at a videoconference hearing before the undersigned Member of the Board in June 2012. A transcript of the hearing is associated with the claims file.

In April 2014, the Board remanded this issue for further evidentiary development. The requested development was completed, and the case has now been returned to the Board for further appellate action.

FINDING OF FACT

A back disorder was not manifest during service and is not otherwise attributable to service.

CONCLUSION OF LAW

A back disorder was not incurred in or aggravated by service. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veterans Claims Assistance Act of 2000 (VCAA), in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2014); Honoring America's Veterans and Caring for Camp Lejeune Families Act of 2012, Pub. L. No. 112-154, §§ 504, 505, 126 Stat. 1165, 1191-93; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015). The VCAA applies to the instant claim. 

VA is required to notify the claimant and his or her representative of any information, and any medical or lay evidence, not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

The duty to notify in this case was satisfied by a letter sent to the Veteran in June 2009. The claim was last adjudicated in September 2014.

The VCAA also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate his claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). This "duty to assist" contemplates that VA will help a claimant obtain records relevant to his claim, whether or not the records are in Federal custody, and that VA will provide a medical examination or obtain an opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4). 

In that regard, the Veteran's service treatment records, private treatment records, and lay statements have been associated with the record. 

Pursuant to Board remand, in May 2014 VA afforded the Veteran an examination and in July 2014 obtained a medical etiological opinion with respect to his back disability. The VA examiner reviewed the evidence of record, considered the Veteran's history and statements, and rendered a medical opinion based upon the facts of the case and the examiner's knowledge of medical principles. The examiner noted that the claims file was reviewed. The examiner identified one back disability currently manifested and one back disability previously manifested. Further, the examiner specifically addressed substantially all of the facts cited in the remand directives. Therefore the Board finds that the Veteran has been provided an adequate medical examination in conjunction with his claim, and one which complies with remand directives. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007).

The April 2014 Board remand directed the RO to ask the Veteran to identify all outstanding treatment related to his back, as testimony at the Board hearing indicated the Veteran received private treatment from a provider other than the one already of record. The remand also directed the AOJ to obtain any outstanding VA treatment records. A May 2014 correspondence requested the Veteran to identify and provide authorizations for outstanding records. The Veteran did not respond to the correspondence. During the May 2014 VA examination, the Veteran stated that he had not requested copies of "outstanding treatment records which may be pertinent to the claim on appeal" per the remand. The Veteran stated at the conclusion of the examination that he would attempt to have the appropriate records sent to the Board of Veterans Appeals. However, VA has not received such records or completed authorizations for them. The Veteran has been afforded ample opportunity to identify and provide authorizations for outstanding medical records, and, via the Board hearing and the remand, he appeared to be aware of the importance of these records. However, he has not provided VA with the records or with the authorizations and has not identified any VA treatment. Therefore, the Board finds that VA has substantially complied with the Board remand directives in this regard. 

Thus, the Board finds that the May 2014 VA examination, the July 2014 VA medical opinion, and the May 2014 correspondence to the Veteran constitute substantial compliance with the Board's remand instructions. See Donnellan v. Shinseki, 24 Vet. App. 167, 176 (2010) ("It is substantial compliance, not absolute compliance, that is required" under Stegall v. West) (citing Dyment v. West, 13 Vet. App. 141, 146-47 (1999)).

During the Board hearing, the undersigned discussed with the Veteran the issue on appeal, the evidence required to substantiate the claim, and asked questions to elicit information relevant to the claim. This action supplemented VA's compliance with the VCAA, 38 C.F.R. § 3.103. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) (2012) requires that the Veteran's Law Judge (VLJ) or Decision Review Officer who chairs a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, the VLJ fully explained the issues on appeal during the hearing and specifically discussed the basis of the prior determination, the element(s) of the claims that were lacking to substantiate the claims for benefits, and suggested the submission of evidence that would be beneficial to the Veteran's claims. Significantly, neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2), nor has he identified any prejudice in the conduct of the Board hearing. By contrast, the hearing focused on the elements necessary to substantiate the claims, and the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claims. As such, the Board finds that, consistent with Bryant, the VLJ complied with the duties set forth in 38 C.F.R. § 3.103(c)(2).

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

Service Connection Laws and Regulations

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009).

Under 38 C.F.R. § 3.303(b) , where the evidence shows an enumerated "chronic disease" in service (or within the presumptive period under § 3.307), or "continuity of symptoms" of such a disease after service, the disease shall be presumed to have been incurred in service. Walker v. Shinseki, 708 F.3d 1331, 1335-37. Arthritis is an enumerated "chronic disease" listed under 38 C.F.R. § 3.309(a); therefore, 38 C.F.R. § 3.303(b) would apply if arthritis is noted or shown in the record. Walker, 708 F.3d at 1338-39. 

Service connection for an enumerated "chronic disease" such as arthritis listed under 38 C.F.R. § 3.309(a) can also be also be established on a presumptive basis by showing that it manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). 

That is, under 38 C.F.R. § 3.303(b), with an enumerated "chronic disease" such as arthritis shown in service (or within the presumptive period under § 3.307), subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected, unless clearly attributable to intercurrent causes. See also Groves v. Peake, 524 F.3d 1306, 1309 (2008). This rule does not mean that any manifestation of joint pain in service will permit service connection of arthritis first shown as a clear cut clinical entity, at some later date. For the showing of chronic disease such as arthritis in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "chronic." 38 C.F.R. § 3.303(b). 

In addition, for chronic diseases listed in 38 C.F.R. § 3.309(a) -such as arthritis-service connection may also be established by showing continuity of symptoms, which requires a claimant to demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of symptoms; and (3) medical or, in certain circumstances, lay evidence of a link between the present disability and the post-service symptoms. 38 C.F.R. § 3.303(b); see Walker, 708 F.3d at 1340 (Fed. Cir. 2013) (holding that only those chronic diseases listed in 38 C.F.R. § 3.309 are subject to service connection by continuity of symptoms described in § 3.303(b). The correct understanding of the "condition noted during service" is that the condition is one that is indicative of but not dispositive of a chronic disease. Walker, 708 F.3d at 1339. Stated another way, continuity of symptomatology after discharge is required only where the condition noted during service (or in the presumptive period) is not, in fact, shown to be chronic or where the diagnosis of chronicity may be legitimately questioned, i.e., "when the fact of chronicity in service is not adequately supported." 38 C.F.R. § 3.303(b). See also Walker, 708 F.3d at 1339-40.

Service connection may also be granted for any disease diagnosed after discharge when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

In evaluating a claim, the Board must determine the value of all evidence submitted, including lay and medical evidence. Buchanan v. Nicholson, 451 F.3d 1331, 1335 (2006). The evaluation of evidence generally involves a three-step inquiry. First, the Board must determine whether the evidence comes from a "competent" source. Competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a); Layno v. Brown, 6 Vet. App. 465, 470 (1994). Lay evidence can also be competent and sufficient evidence of a diagnosis if (1) the medical issue is within the competence of a layperson, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011); Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007).

If the evidence is competent, the Board must then determine if the evidence is credible, or worthy of belief. Barr v. Nicholson, 21 Vet. App. 303, 308 (2007). After determining the competency and credibility of evidence, the Board must then weigh its probative value. In this regard, the Board may properly consider internal inconsistency, facial plausibility, and consistency with other evidence submitted on behalf of the claimant. Caluza v. Brown, 7 Vet. App. 498, 511-12 (1995).

A Veteran bears the evidentiary burden to establish all elements of a service connection claim, including the nexus requirement. See Fagan v. Shinseki, 573 F.3d 1282, 1287-88 (2009); see also Walker v. Shinseki, 708 F.3d 1331, 1334 (Fed. Cir. 2013). In making its ultimate determination, the Board must give a veteran the benefit of the doubt on any issue material to the claim when there is an approximate balance of positive and negative evidence. See Fagan, 573 F.3d at 1287 (quoting 38 U.S.C. § 5107(b)). To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996).

Analysis

The Veteran claims service connection for a low back disorder that has manifested as a ruptured disk in April 2009. The Veteran reported in his May 2009 Application for Compensation that while in service, there were at least three occasions where his back was injured to a point where he could not function. The Veteran alleged that few medical examinations were done to discover the true cause of the damage; however, on at least two occasions the damage was severe and he was sent home for several days to recover. The Veteran further reported that, with respect to his current ruptured disk, his doctor stated that it was almost certainly the result of prolonged abuse. 

At his June 2012 videoconference hearing, the Veteran testified that he continued to have back pain in service and after service. He testified that there were numerous times when he had back pain in service for which he did not go to sick call. He noted that an X-ray in service was taken which was negative, but he has learned that X-Rays are not good mechanisms for finding back issues.

Service treatment records in this case show, a notation of levoscoliosis on the entrance examination report. On June 29, 1996, the Veteran went to sick call complaining his back hurts for 2 days. The assessment was lumbago. On July 1, 1996, he went to sick call complaining of back pain for 4 days. He was diagnosed with mechanical low back pain. The record noted some improvement and "no scoliosis." In March 1997, the Veteran denied recurrent back pain on a report of medical history. 

In September 1998, the Veteran was seen at the U.S. Naval Hospital, Guam, Emergency Room. This is the first diagnosis of lumbar strain. At the time, he stated his last episode happened about one year ago. 

On June 29, 2000, he was seen for right lower back pain while exercising. He had X-rays of the lower spine which were negative for obvious deformities. The assessment was lower back muscle spasms. He was seen the next day in follow-up and said he had better range of motion. Again the assessment was lower back muscle spasms. This was the last time he was seen in sick call and assessed or treated for any back condition while on active duty. 

In October 2000, he was seen because he had been in a motor vehicle accident. He denied injury, pain, and complaints at that time.

In January 2001, the Veteran had a five year physical examination and endorsed on the history form "recurrent back pain or any back injury." The examiner noted a history of back spasms/strain. The examiner found a normal clinical evaluation of the spine and musculoskeletal system. In a May 2002 record, the Veteran denied current medical problems. In November 2002, he had a routine physical with special attention to the back and musculoskeletal system which was required for positive questions marked for the back. The examiner noted a normal evaluation of the spine. The Veteran denied back injury at the time. An additional page to this examination was originally dated November 25, 2002, which was lined through and a new date written of December 2, 2002. The examiner noted a history of muscle pain in the back with the notation "NCD," meaning either "not considered disabling" or "not considered disqualifying." The Veteran denied being in any pain in a separate November 2002 record.

In an October 2003 Self Reporting Tool preventive health assessment (PHA), the Veteran said his pain level was zero on a 0-10 scale. The record noted a history of "lumbar strain,? mild scoliosis." The record prescribed the Veteran to try back exercises and be sure to stretch daily. The Veteran had marked on the health history "no" to "bone, joint, muscle problems." In December 2004, the Veteran denied recurrent back pain or any back condition. In December 2004, he had a submarine duty physical. At the time, he denied problems of the spine and other musculoskeletal problems. The clinical evaluation of the spine was normal. In March 2005, the Veteran denied pain when treated for other issues. In August 2005, he had his separation physical at which time he denied recurrent back pain or any back problem. The clinical evaluation at separation showed a normal spine and musculoskeletal system. At the time, the Veteran signed a form that indicated that defects he reported may entitle him to certain benefits from the Department of Veterans Affairs. Service treatment records also contain an undated form entitled "Adult Preventive and Chronic Care Flowsheet" where low back pain is listed under chronic illnesses. 

Post service, there are treatment records associated with the claims file from Dr. J.J., dated April 2009 to May 2010. These records show a pre-surgery MRI in April 2009 revealing multilevel herniations, with a very large herniation at L3-L4 level, with smaller herniations at L4-L5 and L5-S1. Dr. J.J. diagnosed herniated nucleus pulposus L3, L4, as well as a severe bilateral neurological deficit. After the Veteran's surgery, in May 2010, an MRI showed multilevel spondylosis, and probable root compression at L4-L5, L5-S1, with a lesser likelihood at L3-L4. Dr. J.J. assessed an annular tear at the L4-L5 level, mild central protrusion, no gross recurrent herniation, and a slight right protrusion with annular tear at L5-S1.

The Veteran underwent a VA examination in January 2011. The examiner opined that it was "less likely than yes" that the Veteran's acute disk herniation in 2009 was related to the back pain the Veteran experienced in service, because the Veteran's complaints of low back pain in service were discrete episodes, and it was "extremely clear" that the Veteran's large herniation in April 2009 was a new finding more likely than not caused by the Veteran's rowing machine exercises. The Veteran testified at his June 2012 videoconference hearing that he felt the VA examiner misunderstood his report regarding his large disk herniation in April 2009 because it did not occur as the Veteran was actually doing rowing exercises, but as he was reaching for the equipment. 

At his June 2012 videoconference hearing, the Veteran testified he sought treatment regarding his back pain on at least two occasions prior to his large disk herniation in April 2009, had previously been seen by his family doctor for his back pain, and that he has had continual back pain since service. The Veteran further testified that he was being treated by a pain management physician for his back pain, and that his back specialist, Dr. J.J., had stated in correspondence to the pain management physician that the Veteran's back issue was not caused by a traumatic injury. 

Pursuant to Board remand, the Veteran underwent a VA examination in May 2014 and a medical opinion was rendered in July 2014. The examiner diagnosed the Veteran with intervertebral disc syndrome currently with a prior history of lumbosacral strain. The examiner remarked that the Veteran had lumbosacral strain diagnosed in 1998 while on active duty, which resolved without further sick call visits since June 2000, and that he had intervertebral disc syndrome manifested by multiple herniated discs in April 2009 acquired since discharge from the military. The examiner emphasized that the back disability currently manifested is intervertebral disc syndrome. The examiner opined that it is less likely as not that the intervertebral disc syndrome with multiple herniated discs was incurred in or related to the Veteran's active service.

The examiner reasoned that after reviewing the history of the Veteran's back condition on active duty, there is evidence documented that he was seen for the first 4 years in service for "lumbago," "mechanical low back pain," "lumbar strain," and "lower back muscle spasms." These visits to sick call were from June 1996 to June 2000. However, he remained in the military on active duty even qualifying for submarine duty, and there were no sick call visits for any back condition after June 2000. Therefore, the examiner reasoned, that whatever issues he had with his back had resolved about 5 years prior to discharge. 

The examiner further reasoned that the diagnoses of his back found early in active duty were muscular in origin and do not cause intervertebral disc disease. The Veteran developed lumbar disc disease after his military career. The examiner acknowledged that the Veteran injured his back while reaching for the overhead handle on a piece of Nautilus equipment at a gym, rather than while performing a rowing exercise. The examiner acknowledged the Veteran's use of over-the-counter medications such as Motrin on and off for his low back pain without seeking professional treatment either while on active duty or after military discharge. The examiner reasoned that this is a common practice of many individuals and not isolated just to this Veteran.

Based on a review of the record, the Board finds that service connection for a back disorder is not warranted. The Board finds the July 2014 VA medical opinion to be highly probative evidence against the claim. Therein, the examiner concluded, based on a thorough review of the evidence, that the Veteran's in-service back issues resolved almost five years prior to service separation. The examiner's reasoning is sound, and is consistent with other evidence, including the conclusions of the January 2011 VA spine examination as to the nature of the Veteran's back injuries in service.

The evidence in favor of the claim is the Veteran's lay statements that he experienced continuing symptoms in service and afterwards and his back issues did not resolve. He also contends that his doctor told him the ruptured disk was due to prolonged abuse, perhaps implying that the abuse occurred in service. The Veteran's contentions were made beginning in April 2009, when he submitted his claim for compensation.

Unfortunately, service medical records contradict the Veteran's lay statements that symptoms were continuous, at least in service. In March 1997, October 2000, May 2002, October 2003, December 2004, March 2005, and August 2005 records the Veteran denied having back issues, a history of back issues, or symptoms of pain. In September 1998, he stated that his last back episode was one year prior. This is a significant number of records that indicate the Veteran was not experiencing back pain, in contrast to his later testimony. The Board finds that the service medical records have much greater probative weight than the Veteran's lay contentions beginning April 2009 because the service medical records were created during the time periods at issue. Moreover, as written records, they do not rely on an individual's memory.

Hearing testimony from the Veteran also contradicts the Veteran's claim. He testified that after the disk rupture in the gym, "just based on past experiences having similar problems, I'd just get better." So while the Veteran may have had back pain at times other than those for which he went to sick call, this testimony and the more probative evidence support the position that the in-service and post-service back problems were discrete and resolved.

The Board acknowledges the undated service medical record showing low back pain as a chronic disorder. However, the record does not give a rationale for its assessment, and therefore is assigned little probative weight. Furthermore, multiple clinical evaluations in service find a normal spine and musculoskeletal system. The Board gives these findings more weight than the undated record. Additionally, the Board gives the July 2014 VA medical opinion greater probative weight because of its detailed rational. 

Although the Veteran reported that his doctor opined that the herniated disk was due to prolonged abuse, such opinion does not relate such abuse to service in anything more than a speculative manner. Accordingly, it is of little evidentiary value.

With respect to scoliosis and whether arthritis of the spine was initially manifested during service, the in-service X-ray report revealed no obvious deformities. This report outweighs the clinical evaluation at entrance and the record noting scoliosis with a question mark. This is because the X-ray is a specific medical test. Accordingly, the Board finds the Veteran did not have scoliosis in service. Post-service, there is also no probative, credible evidence of arthritis within one year of the Veteran's military service. Thus, the Veteran is not entitled to service connection for arthritis on a presumptive basis, either as a chronic disease during service or within one year of service. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307(a)(3), 3.309(a); Walker, 708 F.3d 1335 -37.

In sum, the Board finds that the Veteran's in-service low back disorders resolved and are not related to the current intervertebral disk syndrome. Although the Veteran is entitled to the benefit of the doubt where the evidence is in approximate balance, the benefit of the doubt doctrine is inapplicable where, as here, the preponderance of the evidence is against the claim. 38 U.S.C.A. § 5107 (2014); Alemany, 9 Vet. App. at 519.

ORDER

Service connection for a low back disorder is denied.

____________________________________________
DAVID L. WIGHT
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs