Citation Nr: 1829858 
Decision Date: 09/05/18 Archive Date: 09/24/18

DOCKET NO. 17-34 637 ) DATE
 )
 )


THE ISSUE

Whether there was clear and unmistakable error (CUE) in a May 5, 1972 Board of Veterans' Appeals (Board) decision that denied service connection for the cause of the Veteran's death.


REPRESENTATION

Moving party represented by: Virginia Department of Veterans Services


ATTORNEY FOR THE BOARD

M. Thomas, Associate Counsel


INTRODUCTION

The Veteran had active service from September 1951 to September 1955 and from December 1956 to January 1971. Unfortunately, he died in January 1971, while on active duty. The moving party is his surviving spouse.

This matter is currently before the Board on the moving party's January 2017 motion for revision or reversal on the grounds of CUE in the May 5, 1972 Board decision denying service connection the cause of the Veteran's death.


FINDINGS OF FACT

1. In a final decision dated May 5,1972, the Board denied service connection for the cause of the Veteran's death. The moving party was provided with a copy of the decision and filed a motion for reconsideration, which was denied in November 1972.

2. The May 5, 1972 Board decision contained legal error in failing to apply relevant law at the time so as to not constitute a reasonable exercise of rating judgment.

3. But for the legal error in the May 5, 1972 Board decision, the outcome would have been manifestly different and service connection for the cause of the Veteran's death would have been granted.


CONCLUSION OF LAW

The May 5, 1972 Board decision denying service connection for the cause of the Veteran's death was clearly and unmistakably erroneous, and is revised to grant service connection for the cause of the Veteran's death. 38 U.S.C. §§ 5109A, 7111 (2012); 38 C.F.R. §§ 20.1400-1411 (2017). 



REASONS AND BASES FOR FINDINGS AND CONCLUSION

Applicable Caselaw, Statutory, and Regulatory Provisions

A prior final Board decision must be reversed or revised where evidence establishes that there is CUE in the prior final decision. 38 U.S.C. §§ 5109A, 7111; 38 C.F.R. §§ 20.1400-02. All final Board decisions are subject to revision on the basis of CUE except for those decisions which have been appealed to and decided by the Court and decisions on issues which have subsequently been decided by the Court. 38 C.F.R. § 20.1400.

The motion to review a prior final Board decision on the basis of CUE must set forth clearly and specifically the alleged clear and unmistakable error, or errors, of fact or law in the Board decision, the legal or factual basis for such allegations, and why the result would have been manifestly different but for the alleged error. Non-specific allegations of failure to follow regulations or failure to give due process, or any other general, non-specific allegations of error, are insufficient to satisfy this requirement. Motions that fail to comply with these requirements shall be dismissed without prejudice to refiling. See 38 C.F.R. § 20.1404(b); see also Disabled American Veterans v. Gober, 234 F.3d 682 (Fed. Cir. 2000); Simmons v. Principi, 17 Vet. App. 104 (2003). The Board finds that the present motion complied with these requirements and the motion is properly before the Board for consideration on the merits.

Motions for review of prior Board decisions on the grounds of CUE are adjudicated pursuant to the Board's Rules of Practice. 38 C.F.R. Part 20. CUE is a very specific and rare kind of error. It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Generally, either the correct facts, as they were known at the time, were not before the Board, or the statutory and regulatory provisions extant at the time were incorrectly applied. Review for CUE in a prior Board decision must be based on the record and the law that existed when that decision was made. To warrant revision of a Board decision on the grounds of CUE, there must have been an error in the Board's adjudication of the appeal which, had it not been made, would have manifestly changed the outcome when it was made. If it is not absolutely clear that a different result would have ensued, the error complained of cannot be clear and unmistakable. 38 U.S.C. § 7111; 38 C.F.R. §§ 20.1403, 20.1404.

The Court has set forth a three-pronged test to determine whether CUE is present in a prior determination: (1) either the correct facts, as they were known at the time, were not before the adjudicator (i.e., more than a simple disagreement as to how the facts were weighed or evaluated) or the statutory or regulatory provisions extant at that time were incorrectly applied; (2) the error must be "undebatable" and of the sort which, had it not been made, would have manifestly changed the outcome at the time it was made; and (3) a determination that there was CUE must be based on the record and law that existed at the time of the prior adjudication in question. Damrel v. Brown, 6 Vet. App. 242 (1994), Russell v. Principi, 3 Vet. App. 310 (1992). 

Examples of situations that are not CUE include: (1) a new medical diagnosis that "corrects" an earlier diagnosis considered in a Board decision; (2) a failure to fulfill VA's duty to assist the moving party with the development of facts relevant to his claim; or (3) a disagreement as to how the facts were weighed or evaluated. 
See 38 C.F.R. § 20.1403(d). CUE also does not encompass the otherwise correct application of a statute or regulation where, subsequent to the Board decision challenged, there has been a change in the interpretation of the statute or regulation. See 38 C.F.R. § 20.1403(e).

Before deciding a claim, the Board is required to consider all relevant evidence of record and to consider and discuss in its decision all "potentially applicable" provisions of law and regulation. Schafrath v. Derwinski, 1 Vet. App. 589, 593 (1991); Weaver v. Principi, 14 Vet. App. 301, 302 (2001) (per curiam order). In addition, the Board must include in its decision a written statement of the reasons or bases for its findings and conclusions, adequate to enable an appellant to understand the precise basis for the Board's decision. 38 U.S.C. § 7104(a) ("Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record"). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Caluza v. Brown, 7 Vet. App. 498, 506 (1995) aff'd, 78 F.3d 604 (Fed.Cir.1996) (table); Gilbert v. Derwinski, 1 Vet. App. 49, 57 (1990).

The Veterans Claims Assistance Act of 2000 (VCAA) is inapplicable to CUE claims, and therefore need not be discussed herein. Livesay v. Principi, 15 Vet. App. 165 (2001) (en banc); 38 C.F.R. § 20.1411(c).

In the present case, the moving party alleges CUE in a May 5, 1972 Board decision that denied service connection for the cause of the Veteran's death. The pertinent laws and regulations at the time of this decision were similar, if not essentially the same, as they are now. 

Dependency and Indemnity Compensation (DIC) is payable to the surviving spouse of a veteran if the veteran died from a service-connected disability. 38 U.S.C. 
§ 1310; 38 C.F.R. § 3.5(a)(1). In order to establish service connection for the cause of death, the evidence must show that a disability incurred in or aggravated by active service was the principal or contributory cause of death. 38 C.F.R. 
§ 3.312(a). The issue involved will be determined by exercise of sound judgment, without recourse to speculation, after a careful analysis has been made of all the facts and circumstances surrounding the death of the veteran. 38 C.F.R. § 3.312(a). 

In order to constitute the principal cause of death, the service-connected disability must be one of the immediate or underlying causes of death, or etiologically related to the cause of death. 38 C.F.R. § 3.312(b). A contributory cause of death is inherently not one related to the principal cause. In order to constitute the contributory cause of death, it must be shown that the service-connected disability contributed substantially or materially; that it combined to cause death; that it aided or lent assistance to the production of death. It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. 38 C.F.R. § 3.312(c)(1).

Here, the Veteran died in Janaury 1971, while on active duty. Since the Veteran died while on active duty, it follows that the cause of death is related to or caused by service. Therefore, service connection may be granted only so long as the Veteran's death was not the result of his own willful misconduct. 38 CFR 3.301(a). 

An injury or disease incurred during active military, naval, or air service will be deemed to have been incurred in line of duty and not the result of the veteran's own misconduct when the person on whose account benefits are claimed was, at the time the injury was suffered or disease contracted, in active military, naval, or air service, whether on active duty or on authorized leave, unless such injury or disease was a result of the person's own willful misconduct or abuse of alcohol or drugs. 38 U.S.C. § 105. 

"In line of duty" means an injury or disease incurred or aggravated during a period of active military, naval, or air service unless such injury or disease was the result of the veteran's own willful misconduct. A service department finding that injury, disease or death occurred in line of duty will be binding on the Veterans Administration unless it is patently inconsistent with the requirements of laws administered by VA. 38 C.F.R. § 3.1(m).

"Willful misconduct" means an act involving conscious wrongdoing or known prohibited action (malum in se or malum prohibitum). A service department finding that injury, disease or death was not due to misconduct will be binding on VA unless it is patently inconsistent with the facts and the requirements of laws administered by VA. It involves deliberate or intentional wrongdoing with knowledge of or wanton and reckless disregard of its probable consequences. Mere technical violation of police regulations or ordinances will not per se constitute willful misconduct. Willful misconduct will not be determinative unless it is the proximate cause of injury, disease or death. 38 C.F.R. § 3.1(n). See also 38 C.F.R. § 3.302 (1990) ("A person of unsound mind is incapable of forming an intent (mens rea or guilty mind, which is an essential element of . . . willful misconduct)). In interpreting the phrase, the VA construed the term "willful misconduct" to refer to an act of conscious wrongdoing, involving elements of intent and voluntariness. See 52 O.G.C. Prec. Op. 215, 216 (May 23, 1928) (applying a definition of "willful misconduct" as referring to "an act proceeding from a will; done of a purpose; "implying not only a knowledge of a thing, but a determination with a bad intent to do it or to omit doing it."); 66 O.G.C. Prec. Op. 270, 272 (Feb. 26, 1931) (finding of willful misconduct requires "something in the nature of conscious wrongdoing, that is, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences."). The VA incorporated this definition of "willful misconduct" into VA regulations in 1948 (former 38 C.F.R. § 3.65(c) (1948) (defining "willful misconduct" as being "'malum in se' or 'malum prohibitum' if involving conscious wrongdoing or known prohibited action.")). Allen v. Principi, 237 F.3d 1368, 1378-79 (Fed. Cir. 2001)

The simple drinking of alcoholic beverage is not of itself willful misconduct. The deliberate drinking of a known poisonous substance or under conditions which would raise a presumption to that effect will be considered willful misconduct. If, in the drinking of a beverage to enjoy its intoxicating effects, intoxication results approximately and immediately in disability or death, the disability or death will be considered the result of the person's willful misconduct. Organic diseases and disabilities which are a secondary result of the chronic use of alcohol as a beverage, whether out of compulsion or otherwise, will not be considered of willful misconduct origin. 38 CFR 3.301(b)(2). 


Discussion

Here, in the January 2017 CUE motion, the moving party raised multiple allegations of error related to the application of the relevant statutory or regulatory provisions in the May 5, 1972 Board decision. The moving party argued that, had such errors not been committed, the May 5, 1972 Board decision manifestly would have granted service connection for the cause of the Veteran's death. As explained above, the review for CUE in a prior Board decision is based on the record and the law that existed when that decision was made. See 38 C.F.R. § 20.1403(b).

Turning to the moving party's argument in support of the CUE motion, she argues the following: (1) that the Board failed to appropriately apply the laws and regulations in regards to what constitutes willful misconduct and what constitutes proximate cause of death; (2) that the Board failed to appropriately apply the line of duty presumption found in 38 C.F.R. § 3.1(m); and (3) that the Board failed to apply the benefit of the doubt doctrine after weighing the evidence. The moving party argues that but for these errors, service connection for the cause of the Veteran's death would have been granted.

As to the moving party's first argument, that the Board failed to appropriately apply the laws and regulations in regards to what constitutes willful misconduct and what constitutes proximate cause of death, the Board must look to the evidence of record at the time of the May 5, 1972 Board decision to determine if the Board clearly and unmistakably failed to properly apply the relevant laws and regulations in denying the moving party's claim of entitlement to service connection for the cause of the Veteran's death.

As stated above, the Veteran died in January 1971, while on active duty. According to the death certificate, the Veteran's immediate cause of death was shock from a fractured skull and possible fractured neck, with an underlying cause of exposure. The death certificated indicated that this injury was incurred in an automobile accident. A January 1971 laboratory report indicated that the Veteran's blood alcohol level was 0.22. 

In January 1971, a park service ranger completed an accident report. The Veteran was noted to have been drinking and fatigued at the time of the accident. There was no apparent vehicle defect. Weather conditions were described as "clear." The road character was described as a "sharp curve or turn," going downhill. The road condition was described as "dry." The Veteran had been working long hours each day the previous week, including 5 hours of work the day prior to his death (a Saturday). He had some domestic problems and was observed in the NCO club just prior to the accident, drinking beer and participating in other social activities. He left the club at approximately 2:30 in the morning. There were no witnesses to the accident. The enclosed accident diagram indicated that the Veteran's vehicle went off the road at the beginning of a curve. There were no skid marks on the pavement and all scuffmarks were on the grassy shoulder and in the ditch. The Veteran's blood alcohol level and the presence of a beer can in the wrecked vehicle were noted. The investigator opined that wearing a seat belt would have saved the Veteran's life. 

In January 1971, AF Form 25, Report of Facts and Circumstances of Death, was completed by an investigator. The Veteran's blood alcohol volume was noted. The accident occurred when at approximately 0240 hours on the Blue Ridge Parkway when Veteran's personal vehicle ran off the road, struck trees and rocks, and overturned. The vehicle sustained relatively minor damages. The Veteran's normal duty hours were from 0730 to 1600 hours on weekdays. However, this section of the parkway had experienced maintenance problems for several days prior the Veteran's death. The Veteran had worked long hours (15-17 hours per day) attempting to clear up the maintenance problems up until the date of his death. At 0800 hours on the day of his death, the Veteran met a coworker for breakfast before they hauled and stacked hay. At 1300 hours, the Veteran arrived on station and was seen at the noncommissioned officers (NCO) club, where he assisted in showing movies for dependent children. The Veteran reported to his duty section at 1500 hours and worked until approximately 2000 hours, at which time he went to the NCO club to eat. He remained in the club participating in club activities and consuming beer until approximately 0230 hours, at which time he left the club. At the location of the accident, the speed limit was 45 miles per hour (mph) and the Veteran's speed was estimated to be 35 mph. The investigator opined that the primary cause of this accident was excessive consumption of alcoholic beverages, but fatigue was a contributing factor. There was a strong possibility that the Veteran had either fallen asleep or passed out at the wheel. It was likely that had seat belts been worn, there would have been no fatality. This report also considered several statements from the Veteran's co-workers and people present at the NCO club on the night of the Veteran's death. These statements all indicated that the Veteran had been drinking at the NCO club and working long hours the week prior, but were conflicting as to the extent to which the Veteran was visibly intoxicated. The investigating officer, 1st Lt. H., was appointed to such investigation by Capt. N. 

In September 1971, the Veteran's commanding officer, Major N. (a captain at the time of the accident), stated that, subsequent to the subject report on the Veteran was submitted on January 28, 1971, he had reviewed that report and the Ground Safety Accident Report. He had also talked extensively with those personnel who saw the Veteran during the evening prior to the accident. He had also on several occasions gone over, by car and foot, that portion of the Blue Ridge Parkway where the accident occurred. Major N. stated that review of the case files of the accident led him to the conclusion that VA's denial of the moving party's claim was "based solely on the blood alcohol content listed in the coroner's report, and an opinion that the primary cause of the accident was intoxication. Evidently, the beer can found in the truck had a strong influence in this decision. The reports omitted the fact that the can had obviously been in the truck for some days, or the fact that canned beer was not available on station." He stated that, as a result of his review of the circumstances, events, and conditions surrounding the accident, he strongly felt that intoxication was not the primary cause of the accident. Major N. stated that two factors were most significant. First, the Veteran for the previous two weeks had put in an average of 12 hours per day in his duty station, as well as engaging in strenuous physical activity at his new home and small farm. Second, road and weather conditions on top of the mountain on the night of the accident were unusually severe. An accumulation of ice and snow was already on the ground and highway shoulders. Light snow flurries had begun prior to the Veteran's departure from the station. This snow was driven by a high velocity, freezing wind. Under these road and weather conditions, the Veteran negotiated seven curves prior to his vehicle leaving the road and over-turning. These curves were on the steepest grade on the Parkway between the station and Route 43 intersection. Two of these curves were extremely dangerous and could not be made by an intoxicated driver. Major N. stated that the curve where the accident occurred was one of the easiest on this portion of the Parkway to negotiate. In addition, Major N. stated that the path of the Veteran's vehicle around the fatal curve, prior to striking the partially buried boulder, indicated to him that the Veteran was in full control of the truck although his right wheels were off the road. He stated that the investigating Ranger's estimate of the Veteran's speed supported this assumption. This assumption, combined with Major N.'s own experience on this curve, led him to believe that the Veteran had partially left the road to avoid another vehicle coming around the curve from the opposite direction. Major N. stated that he had contacted Headquarters Air Force Casualty Division and requested instructions as to the procedures for submitting a supplemental report to the initial Report of Facts and Circumstances, but the Personal Services Section was unable to provide any positive guidance. He was seeking further information as to how changes to the initial AF Form 25 could be made or how additional data pertinent to the findings of the initial report could be submitted and entered as part of that report. The Board notes that an October 1971 letter on VA letterhead indicated that this letter from Major N. was forward to VA by the Air Force Casualty Division, which informally advised VA that they had informed Major N. that there were no provisions to change or add to the report of circumstances regarding the Veteran's death unless new and material evidence was discovered. 

The moving party was afforded a Board hearing in December 1971. The moving party testified that the Veteran was working very long hours in the several months prior to his death and would often drive to work in inclement weather, including ice storms. She stated that the Veteran was "just completely worn out and just to the point of - well he couldn't hardly eat." She stated that on the morning prior to his death, the Veteran was very tired and had been stationed at the same base for four years prior to his death. Their home was around 18 miles from the base, and the Veteran traveled that route at least twice a day. The moving party stated that she had driven up the mountain looking for the Veteran between 8:00 and 9:00 in the morning on January 17, and that it was snowing very hard at that time. The ground was completely covered with the road very slippery. The moving party testified that the Veteran would have left his place of employment on those road conditions regardless of whether he had had one single drink or was tired. The Veteran did not have any infractions of discipline during his career, had never drunk to excess while working, and had not had any previous episodes of driving under the influence of alcohol or of reckless driving.

As to the moving party's first argument, that the Board failed to appropriately apply the laws and regulations in regards to what constitutes willful misconduct and what constitutes proximate cause of death, the determination in the May 5, 1972 Board decision that Veteran's actions in consuming alcohol and driving while intoxicated constituted willful misconduct was not clearly and unmistakably erroneous. As detailed above, the weight of the evidence clearly reflects that the Veteran willingly and knowingly consumed alcohol and chose to drive the night of his death. Therefore, the remaining question is whether the Veteran's willful misconduct in consuming alcohol to enjoy its intoxicating effects, and subsequent decision to drive while intoxicated, was the proximate cause of the Veteran's death. 

"Proximate cause" is defined as "[a] cause that directly produces an event and without which the event would not have occurred." Donnellan v. Shinseki, 24 Vet. App. 167, 173 (2010) (citing BLACK'S LAW DICTIONARY 213 (7th ed. 1999)). In other words, "the proximate cause of an event is that act or omission which, in natural and continuing sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." MicroStrategy Inc. v. Bus. Objects, S.A., 429 F.3d 1344, 1361 (Fed. Cir. 2005). 

In the May 1972 decision, the Board found that the Veteran's "decision to drive the mountain road while in his intoxicated condition, against the advice of a fellow serviceman, in the early morning hours, and in spite of his previous long work hours and reduced amount of sleep, is descriptive of a wanton disregard of the probability of harmful consequences to himself, particularly if the road conditions, about which there is some conflict, were such as described by the Veteran's wife and his commanding officer, irrespective of the fact that he had reportedly driven the road in all types of weather conditions," was considered by the Board to be willful misconduct. The Board further concluded that "the lack of skid marks at the scene of the accident, the estimated slow speed of the vehicle when it left the road, its subsequent course of travel, and the absence of evidence of some other positive factor, when evaluated in connection with the Veteran's intoxicated condition at the time, demonstrate that his willful misconduct was the proximate cause of his injuries." 

The Board finds that the evidence at the time of the May 5, 1972 Board decision clearly and unmistakably indicates that the proximate cause of the Veteran's death was his lack of seat belt. See January 1971 AF Form 25, Report of Facts and Circumstances of Death, and the January 1971 accident report completed by the park service ranger (both indicating that the Veteran would have survived the accident if he had been wearing a seat belt). Thus, the Veteran's willful misconduct in consuming alcohol and driving while intoxicated was not the proximate cause of his death, as these actions did not result in a natural and continuing sequence, unbroken by an efficient intervening cause, that produced the accident, and without which the accident would not have occurred. See MicroStrategy Inc., 429 F.3d at 1361; Donnellan, 24 Vet. App. at 173. 

For these reasons, the Board finds that the statutory or regulatory provisions extant at the time of the May 5, 1972 Board decision were incorrectly applied and the error is "undebatable" and of the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made."

As noted above, the Veteran died while on active duty. Since the Veteran died while on active duty, it follows that the cause of death is related to or caused by service. Therefore, so long as the Veteran's death was not the result of his own willful misconduct, service connection for the cause of the Veteran's death is warranted. 38 CFR §§ 3.5(a)(1), 3.301(a), 3.312(a).

Thus, after considering the moving party's contentions and the evidence of record at the time of the May 5, 1972 Board deicions, the Board finds clear and unmistakable legal error in the Board's May 5, 1972 decision denying service connection for the cause of the Veteran's deah, as the statutory and regulatory provisions extant at the time were not applied. Moreover, had the legal error discussed above not been committed, the May 5, 1972 Board decision manifestly would have granted service connection for the cause of the Veteran's death, as he died on active duty and his willful misconduct was clearly and unmistakably not the proximate cause of his death. 

In sum, the Board concludes that the May 5, 1972 Board decision is clearly and unmistakably erroneous; therefore, the May 5, 1972 Board decision should be revised, resulting in a grant of service connection for the cause of the Veteran's death. 38 U.S.C. § 7111; 38 C.F.R. §§ 20.1400, 20.1402-1404.


ORDER

The May 5, 1972 Board decision, having been found to be clearly and unmistakably erroneous in denying service connection for the cause of the Veteran's death, is revised to reflect a grant of service connection for the cause of the Veteran's death.




 ____________________________________________
 S. B. MAYS
 Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs