# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 07-2041

KEVIN T. DONNELLAN, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued April 27, 2010                               Decided   November 17, 2010)

*Kenneth M. Carpenter* of Topeka, Kansas, argued for the appellant; *Jenny C. Mark,* of Washington, D.C., was on the brief for the appellant.

*Shanti L. Hageman,* with whom *Will A. Gunn,* General Counsel*; Randall Campbell*, Assistant General Counsel; and *Brian B. Rippel,* Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before GREENE, MOORMAN and SCHOELEN, *Judges*.

SCHOELEN, *Judge*: The appellant, Kevin T. Donnellan, through counsel, appeals a March 22, 2007, Board of Veterans' Appeals (Board) decision that denied his claim for service connection for residuals of a perforated small bowel. Record (R.) at 1-12. This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). This appeal arises in the context of the appellant's service on active duty for training and raises questions concerning the elements of aggravation of a disability, concerning who carries the burden of proving the elements, and concerning the standard of proof involved in establishing veteran status. Because the Board did not provide an adequate statement of reasons or bases for its decision and failed to ensure compliance with a previous Board remand, the Court will vacate the March 2007 Board decision and remand the matter for further proceedings.

# I. BACKGROUND

The appellant served in the Army National Guard from October 1969 through February 2000. R. at 17. In 1996, the appellant was diagnosed as having sigmoid colon cancer and underwent surgery to remove a portion of the sigmoid colon. R. at 396. Following this surgery, he received chemotherapy and radiation treatment. *Id.* In September 1997, the appellant had surgery to repair an incisional hernia that appears to be related to the first surgery. R. at 367.

In March 1998, the appellant underwent another surgery after Dr. Counihan, his physician, discovered that he had developed multiple polyps in his colon and rectum. R. at 367. This surgery involved removal of the entire large colon and attachment of the small intestine directly to the rectum. R. at 355, 364. In April 1998, the appellant was hospitalized for five days for an "intra-abdominal abscess" and was treated with drainage, intravenous antibiotics, and nutrition. R. at 350.

The appellant had active duty for training from May 30, 1998, through June 5, 1998. R. at 271. On June 3, 1998, a few days after going on active duty for training, he was hospitalized with fever, chills, and severe right-sided abdominal pain. R. at 81, 405-08. He underwent an emergency exploratory laparotomy for a "small bowel perforation." R. at 407. The surgery involved two "small bowel resections (removal of 48 inches of small intestine), debridement, and drainage of the abdominal abscess. *Id.* After the June 1998 surgery, doctors discovered that the appellant had a "small bowel enterocutaneous fistula, which was treated conservatively."[1] R. at 405. The discharge diagnosis was "perforated small bowel secondary to intra-abdominal abscess, and resolving small bowel fistula." R. at 405.

In October 2001, the appellant filed a claim for service connection for a perforated small intestine. R. at 65-78. On May 29, 2002, the RO denied the appellant's claim. R. at 176-80. In December 2002, the appellant appealed the RO decision. R. at 201-02, 249. In December 2004, the Board remanded the claim for further development. R. at 286-90. The Board ordered the RO to obtain a medical opinion as to "[w]hether or not the appellant's status post colectomy underwent a

---

[1] A fistula is an abnormal passage. STEDMAN'S MEDICAL DICTIONARY 70, 679 (27th ed. 2000). An enterocutaneous fistula is a "fistulous passage connecting the intestine and skin of the abdomen." *Id.* at 68.

2

permanent increase in severity beyond its natural progression during annual training from May 30, 1998, to June 5, 1998." R. at 289.

In October 2005, the RO obtained a medical opinion from Dr. Gordon, a VA physician who opined that there was no relationship between the appellant's preexisting condition and service. R. at 505-06. Dr. Gordon further opined that the appellant's in-service development of enterocutaneous fistulas resulted from complications of the preservice colon cancer surgeries. R. at 505-06.

Apparently, after concluding that Dr. Gordon's report was not adequate to address the December 2004 Board remand, in April 2006, the Board requested an independent medical opinion (IME) to answer the same questions that were posed to Dr. Gordon. R. at 554. In December 2006, Dr. Ford, from Howard University Hospital and College of Medicine, responded that the questions were "somewhat" confusing." R. at 581. Dr. Ford indicated that the appellant's active duty for training did not cause his "fistulous disease" and that he could have had a setback during his active duty for training that could have reopened his preservice fistula. *Id*. Dr. Ford did not state whether the appellant's preexisting condition underwent a permanent increase in severity and whether any such increase was beyond the natural progression of the condition. *Id.*

The record before the Board also included a December 1998 letter from Dr. Counihan stating that when the appellant entered active duty for training the previous "enterocoutaneous fistula" was "healed." R. at 332. Dr. Counihan further stated that the "intestinal perforation that occurred while [the appellant] was on [active duty for training] was not a predictable consequence of his original surgery, since recurrence of fistulas after they have healed are exceedingly rare (probably less than 2% in this kind of case)." *Id*.

On March 22, 2007, the Board issued its decision the Court considers here on appeal. R. at 1-13. The Board concluded that the appellant's preexisting condition, involving colon cancer and complications of treatment for that cancer, was not aggravated during his active duty for training. R. at 12. In reaching its decision, the Board determined that the appellant was entitled to the presumption of aggravation, but concluded that there was clear and unmistakable evidence that his active duty for training did not aggravate his preexisting condition. *Id*.

## II. THE PARTIES' CONTENTIONS

Mr. Donnellan argues that the Board's decision should be reversed because VA has not shown by clear and unmistakable evidence that his preexisting condition was not aggravated in service. Appellant's Brief (Br.) at 5-10; Appellant's Supplemental Br. at 7-9. Alternatively, Mr. Donnellan argues for remand of the Board's decision because the Board failed to ensure that its remand instructions were followed in accordance with *Stegall v. West*, 11 Vet.App. 268 (1998). Specifically, he contends that the IME report does not address whether his in-service disability underwent an increase in disability and whether any increase was attributed to the natural progress of the disability. Appellant's Br. at 10-12.

The Secretary argues for affirmance of the Board decision. In his supplemental brief, the Secretary argues that the Board erred when it applied the presumption of aggravation and determined that there was clear and unmistakable evidence to rebut the presumption of aggravation. Secretary's Supplemental Br. at 9. However, he argues that any error was harmless because the Board applied a more favorable standard than required by law. *Id.* Additionally, he contends that the Board decision should be affirmed because there was a preponderance of evidence that showed that the appellant's preexisting disease or injury did not worsen beyond the natural progress of the disease. *Id*. He further asserts that there was substantial compliance with the Board's remand instructions. Secretary's Br. at 11-12.

## III. LAW AND ANALYSIS

Mr. Donnellan seeks disability compensation benefits for aggravation of a preexisting disability that he maintains occurred during his active duty for training. Generally, "[i]n order to qualify for VA benefits, a claimant . . . or the party upon whose service the claimant predicates the claim . . . . [must be] a 'veteran.'" *Cropper v. Brown,* 6 Vet.App. 450, 452 (1994); *see D'Amico v. West,* 209 F.3d 1322, 1327 (Fed. Cir. 2000). Accordingly, in order for the appellant to establish his entitlement to disability compensation benefits, he must first establish his status as a veteran. *See Aquilar v. Derwinski*, 2 Vet.App. 21, 23 (1991).

The Court rejects both parties' arguments that the Board *implicitly* made a finding as to whether Mr. Donnellan established his status as a veteran. It is axiomatic that the Board is required

4

to include in its decision a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; that statement must be adequate to enable an appellant to understand the precise basis for the Board's decision, as well as to facilitate informed review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown,* 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski,* 1 Vet.App. 49, 56-57 (1990). The Board must consider all evidence of record and discuss all "potentially applicable" provisions of law and regulation. 38 U.S.C. § 7104(a). Nowhere in the Board decision does the Board discuss whether Mr. Donnellan has established his status as a veteran. Rather, without ever addressing the appellant's veteran status, the Board applied the presumption of aggravation under 38 U.S.C. § 1153, which provides that "a preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease." 38 U.S.C. § 1153; *see* R. at 6, 10. This was error because the presumption of aggravation under section 1153 does not apply to claims based on a period of active duty for training. *See Smith v. Shinseki*, 24 Vet.App. 40, 48 (2010).

Although the presumption of aggravation is not applicable in this case, the parties nevertheless dispute whether the appellant's condition was aggravated during his active duty for training and thus ultimately can be service connected. The question before the Court concerns the elements of aggravation, who carries the burden of proving the elements, and the appropriate standard of proof when an individual who has served only on active duty for training seeks to establish his status as a "veteran" for purposes of obtaining disability compensation benefits. The Court holds that the term "aggravated" as it is used in section 101(24)(B) means that in order for a claimant to have active service that qualifies him to be a "veteran," the evidence must establish that during his period of active duty for training, he experienced a permanent increase in disability beyond the natural progress of that disease or injury.

A. Definition of "Veteran" for the Purpose of Establishing Veteran Status

The term "veteran " for purposes of VA benefits applies only to individuals who meet certain criteria established by Congress. One of the benefits administered by VA that is reserved for *veterans* is disability compensation. Basic entitlement to such benefits for wartime veterans derives

from 38 U.S.C. § 1110, which provides, in part, as follows: "For disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the *active military, naval, or air service* . . . the United States will pay to any *veteran* thus disabled . . . compensation as provided in this subchapter. . . . ." 38 U.S.C. § 1110 (emphasis added); 38 C.F.R. §§ 3.303(a), 3.304 (2010).

A "veteran" is "a person who served in the active military, naval, or air service. " 38 U.S.C. § 101(2); *see also* 38 C.F.R. § 3.1(d) (2010). The term "active military, naval, or air service" is defined to include "active duty" and "any period of active duty for training *during which* the individual concerned was *disabled or died from a disease or injury incurred or aggravated in line of duty."* 38 U.S.C. § 101(24)(A) - (B) (emphasis added); *see also* 38 C.F.R. § 3.6(a) (2010). In turn, the term "active duty for training" includes certain full-time duty in the Army National Guard. 38 U.S.C. § 101(22); *see also* 38 C.F.R. § 3.6(c)(4).

In *Paulson v. Brown,* 7 Vet.App. 466, 470 (1995), the Court observed that the statutory definition of "veteran" makes a clear distinction between those who serve on active duty and those who only serve on active duty for training. Although service on active duty, alone, is sufficient to meet the statutory definition of "veteran," service on active duty for training, without more, will not suffice to give one veteran status. 38 U.S.C. §§ 101(24) (A) and (B). An individual who served only on active duty for training will be considered a "veteran" if that individual suffers "from a disease or injury incurred or aggravated in line of duty." 38 U.S.C. § 101(24)(B). In *Paulson*, the Court held that because of this distinction, an individual seeking VA disability compensation based only on active duty for training must establish a service-connected disability in order to achieve veteran status and to be entitled to disability compensation benefits. *Paulson, supra*.

B. Elements for Establishing Veteran Status Based on
Aggravation During Active Duty for Training

In this case, the Court ordered the parties to submit supplemental briefing to discuss (1) the meaning of "aggravated in the line of duty" as it is used within 38 U.S.C. § 101(24), and the (2) the elements of proof that are required to establish aggravation pursuant to section 101(24). In doing so, the Court required the parties to address the applicability, if any, to section 101(24) of the language in 38 U.S.C. § 1153, which provides that "a preexisting injury or disease will be considered

6

to have been aggravated by active . . . service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease."

Both parties agree that "aggravated" as it is used in section 101(24) should have the same meaning as "aggravated" in section 1153. However, Mr. Donnellan maintains that a claimant with only active duty for training may establish aggravation by showing only that his preexisting condition "increased in disability" during service. The Secretary posits that an active duty for training claimant must establish both that (1) "there was an increase in disability as to a preexisting injury or disease" and (2) that such an increase "was beyond the natural progress of that injury or disease." *Id.* at 4. Under the Secretary's position, the claimant would have to establish more than an increase or a worsening of his preexisting condition during service; he would have to show that the preexisting disability progressed beyond the natural progress of the disease. Secretary's Supplemental Br. at 3-4.

The Court agrees with the Secretary that "aggravated" in section 101(24)(B) carries the same definition as "aggravated" in section 1153 and, therefore, should include both elements of aggravation discussed in section 1153. In adopting this construction of the statute, the Court is following the well-established rule of statutory construction that terms in a statute have the same meaning to identical language used in related parts of the same statutory scheme. *See Nat'l Org. of Veterans' Advocates v. Sec'y of Veterans Affairs,* 260 F.3d 1365, 1379 (Fed. Cir. 2001) (noting that "normally 'identical words used in different parts of the same act are intended to have the same meaning'" (quoting *Gustafson v. Alloyd Co., Inc.,* 513 U.S. 561, 570 (1995))); *Smith v. Brown,* 35 F.3d 1516, 1523 (Fed. Cir. 1994). Here, "aggravated" as it is used in these statutory provisions possesses the same import.

Recently in *Smith*, 24 Vet.App. at 48, this Court stated that a claim for benefits based on aggravation of a preexisting condition during active duty for training requires a claimant to show evidence "*both* that a worsening of a condition occurred during the period of active duty for training *and* that the worsening was *caused by* the period of active duty for training" (emphasis in original). In arriving at this conclusion, the Court was persuaded that because the phrase in section 101(24)(B) referring to "active military, naval, or air service" has a distinct meaning with respect to claims based on a period of active duty for training, such a claimant must submit evidence that a preexisting

7

condition was aggravated "'in [the] line of duty' (that is, caused by the period of active duty for training)." *Id.*

The language quoted above in *Smith* states that an active duty for training claimant must show that the worsening was *caused* by his active duty for training and refers to section 101(24)(B)'s use of the phrase "in the line of duty." That phrase has been interpreted to mean that an injury or disease that is incurred during service will be deemed to have occurred "in the line of duty" unless it is shown that the disease or injury was due to the claimant's willful misconduct. *Holton v. Shinskseki*, 557 F.3d 1362, 1366 (Fed. Cir. 2009) (discussing the phrase "line of duty" as used in 38 U.S.C. § 105(a)); *Nat'l Org. of Veterans' Advocates,* 260 F.3d at 1379 ("Normally 'identical words used in different parts of the same act are intended to have the same meaning."). "[A]n injury or disease will be deemed to have been incurred in the line of duty if it occurred at almost any time during a veteran's active service – even during authorized leave." *Holton,* 557 F.3d at 1366. In *Holton*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) clarified that "a veteran need not show that his injury occurred while he was performing service-related duties or acting within the course and scope of his employment in order to receive disability benefits; for purposes of disability compensation, a service member's workday never ends." *Holton*, 557 F.3d at 1366. Thus, the phrase "line of duty" does not require a claimant to show that a disease or injury was *proximately* caused by service. *See Holton, supra.* "Proximate cause" is defined as "[a] cause that directly produces an event and without which the event would not have occurred." BLACK'S LAW DICTIONARY 213 (7th ed. 1999).

Although an active duty for training claimant is not required to show that his active duty for training proximately caused the worsening of his preexisting disability, the definition of aggravation set forth in section 1153 and incorporated by section 101(24)(B) does require that an active duty for training claimant establish that there is a causal relationship between the worsening of the claimant's preexisting condition and his active duty for training. *See Smith, supra.* The causal relationship is shown when the claimant establishes that the preexisting condition worsened beyond the natural progress of that condition during service. The Court holds that "aggravated in the line of duty" as its used in section 101(24)(B) means that in order for a claimant to establish his status as a "veteran"

8

under section 101(24)(B), he must demonstrate that he experienced a permanent increase in disability beyond the natural progress of that disease or injury during his period of active duty for training.

## C. Burden of Proof

Mr. Donnellan argues that the burden of proof for establishing veteran status should be identical to the shifting burdens set forth in section 1153. Appellant's Supplemental Br. at 4-7. In *Wagner v. Principi*, 370 F.3d 1089, 1096 (Fed. Cir. 2004), the Federal Circuit held that section 1153 creates a presumption of aggravation that is triggered when a veteran establishes that a preexisting condition, which was noted upon entry into service, worsens during service. *Id.* If the presumption arises, then the burden shifts to the Government to show a lack of aggravation by establishing that the in-service "'increase in disability is due to the natural progress of the disease.'" *Id.* (quoting section 1153). Thus, Mr. Donnellan maintains that an active duty for training claimant has the burden of showing that a preexisting condition underwent an increase in severity during his active duty for training. After satisfying this burden, the burden would shift to VA "to show by clear and unmistakable evidence (obvious or manifest) that such an increase was due to the natural progress." *Id.* at 7. Essentially, Mr. Donnellan's approach would mean that the presumption of aggravation set forth in section 1153 would be applied at the time that VA determines whether a claimant meets the definition of "veteran."

The Secretary counters that there should be no burden shifting when an active duty for training claimant seeks to establish his veteran status by showing that a preexisting condition was aggravated during his active duty for training service. Secretary's Supplemental Br. at 3-4. The Secretary argues that a claimant should bear the burden of showing that the preexisting disability worsened in service and that such worsening was beyond the natural progression of the disease. *Id.*

The Court agrees with the Secretary. Pursuant to 38 U.S.C. § 5107(a), it is the claimant's responsibility to "present and support a claim for benefits under laws administered by the Secretary." *See Fagan v. Shinseki*, 573 F.3d 1282, 1286 (Fed. Cir. 2009) (noting the claimant's general evidentiary burden to establish his claim); *see also Skoczen v. Shinseki*, 564 F.3d 1319, 1328 (Fed. Cir. 2009) (interpreting section 5107 and stating that a claimant has the burden of presenting evidence supporting his or her claim, albeit with the statutorily mandated assistance of VA); *cf. Gardner v. Shinseki*, 22 Vet.App. 415, 421-22 (2009) (holding that VA's duty to assist applies to all

elements of a claim, including establishing veteran status). It follows that, in order to establish his status as a veteran, a claimant seeking benefits based on aggravation of an injury or disease during active duty for training has the burden of showing both aggravation elements. *See* 38 U.S.C. § 5107(a). Placing the burden of establishing both elements of aggravation on Mr. Donnellan is consistent with the clear distinction that section 101(24) makes between an active duty for training claimant and an active duty claimant. An active duty for training claimant may establish his status as a veteran only after demonstrating that he suffered from a disability that was either incurred or aggravated during active for training. There is no such statutory requirement imposed on an active duty claimant. *See Smith* and *Paulson,* both *supra*. If VA were to apply the burden of proof as advocated by Mr. Donnellan, it would obliterate the distinction set forth in section 101(24) between a person who served on active duty and a person who served on active duty for training. *See Smith* and *Paulson,* both *supra*.

Additionally, as noted above, Mr. Donnellan's argument ignores the fact that the presumption of aggravation does not apply to a claimant who is seeking disability compensation benefits based on his active duty for training. *See Smith*, 24 Vet.App. at 48 (holding that where a claim is based on a period of active duty for training, the presumption of aggravation is not applicable); *Paulson,* 7 Vet.App. at 471 (holding that neither the presumptions of soundness nor aggravation are applicable when determining veteran status). This is particularly clear when sections 1110 and 1153 are read in conjunction with each other. While section 1110 mandates that a "veteran" be compensated for a preexisting injury that is aggravated in service, section 1153 sets forth how such a "veteran" establishes that a preexisting condition was aggravated by service, so that he is entitled to the disability compensation benefits authorized by section 1110. When viewing sections 1110 and 1153 together, it is clear that the presumption of aggravation is not available to those claimants whose claims are based on their active duty for training periods because they do not have veteran status. *See Smith* and *Paulson,* both *supra; see also Meeks v. West,* 12 Vet.App. 352, 354 (1999)("'[E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.'" (quoting 2A N. SINGER, SUTHERLAND ON STATUTORY CONSTRUCTION § 46.05 (5th ed.1992))).

10

## D. Standard of Proof

The "standard of proof" refers to the evidentiary threshold a litigant must satisfy in order to prevail on his claim. *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990); *see also Ortiz v. Principi*, 274 F.3d 1361, 1364 (Fed. Cir. 2001). In *Gilbert*, this court recognized that a unique standard of proof – the "benefit of the doubt"– applies in decisions involving claims for veteran's benefits. 1 Vet.App. at 53. The "benefit of the doubt" standard, which is at the farthest end of the spectrum of the various standards of proof in American legal jurisprudence, was enacted by Congress "in keeping with the high esteem in which our nations holds those who have served in the Armed Serves." *Id.;* 38 U.S.C. § 5107(b). The "benefit of the doubt" standard applies when the positive and negative evidence regarding the merits of a veteran's claim for benefits are in approximate balance. *Id*. When such equipoise exists, the veteran must prevail on the merits of his claim. *Gilbert,* 1 Vet.App. at 53-56. Therefore, a veteran need only demonstrate that there is an approximate balance of evidence in order to prevail on his claim. *Id.* A claim for veterans benefits may only be denied when the preponderance of evidence is against a claim. *Id*.

The Secretary argues that VA should apply the "benefit of the doubt" standard when adjudicating a claimant's veteran status. Secretary's Br. at 5. The Court agrees and holds that the benefit of the doubt standard applies to the question of veteran status. *See Gardner,* 22 Vet.App. at 421 n.5 (stating that the burden to prove veteran status by a preponderance of the evidence is no longer controlling law). Thus, if a claimant shows that there is an approximate balance of positive and negative evidence that a preexisting disability was permanently worsened beyond the natural progress of that disease during active duty for training, he is entitled to the benefit of the doubt in establishing his status as a veteran.

## E. *Stegall* Violation

"[A] remand by this Court or the Board confers on the . . . claimant, as a matter of law, the right to compliance with the remand orders." *Stegall v. West,* 11 Vet.App. 268, 271 (1998). When "the remand orders of the Board or this Court are not complied with, the Board itself errs in failing to [e]nsure compliance." *Id.* It is substantial compliance, not absolute compliance, that is required. *See Dyment v. West,* 13 Vet.App. 141, 146-47 (1999). Such a failure to ensure substantial compliance can constitute the basis for a remand by this Court. *Id.*

11

The Board's December 2004 remand order directed the RO to obtain a medical opinion that addressed whether Mr. Donnellan's preexisting condition worsened in service, and if so, whether that worsening was a result of the natural progress of the preexisting condition. The Court agrees with the appellant that Dr. Ford's December 2006 response to the questions inadequately addresses the questions posed to her and that the Board should have ensured compliance with its previous remand order by obtaining a medical opinion that addressed the remand order. Dr. Ford never stated whether Mr. Donnellan's preexisting condition worsened in service and, if so, whether any in-service worsening of his preexisting condition was attributed to the natural progress of his preexisting condition. Indeed, Dr. Ford's response that she was confused by the questions should have signaled to the Board that her response was inadequate to address the questions posed to her. Accordingly, on remand, the Board should ensure compliance with the remand order and obtain a medical opinion that addresses the Board's remand order.

### III. CONCLUSION

Upon consideration of the foregoing analysis, the record on appeal, and the parties' pleadings, the March 22, 2007, Board decision is VACATED and the matter is REMANDED for further proceedings consistent with this opinion.