Citation Nr: 21049982
Decision Date: 08/13/21 Archive Date: 08/13/21

DOCKET NO. 13-00 739
DATE: August 13, 2021

REMANDED

Entitlement to an initial rating in excess of 10 percent prior to November 6, 2018, and in excess of 30 percent beginning January 1, 2020, for total right knee replacement is remanded.

REASONS FOR REMAND

The Veteran served on active duty from May 1985 to March 2010.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a February 2011 rating decision by a Department of Veterans Affairs (VA) Regional Office (RO). In that decision, the RO granted service connection for right knee degenerative joint disease status post anterior cruciate ligament reconstruction surgery and assigned a 10 percent rating, effective April 1, 2010. 

In a June 2019 rating decision, the RO found that the Veteran's service-connected right knee disability had progressed to requiring a total knee replacement and assigned a 100 percent rating effective November 6, 2018, to December 31, 2019, and assigned a minimum 30 percent rating effective January 1, 2020. The Veteran's right knee disability has now been recharacterized as a total right knee replacement and is evaluated under Diagnostic Code 5055. 

In July 2017 and April 2021, the Board remanded this matter for further evidentiary development.

Entitlement to an initial rating in excess of 10 percent prior to November 6, 2018, and in excess of 30 percent beginning January 1, 2020, for total right knee replacement

In the initial remand in July 2017, the Board remanded the Veteran's increased rating claim to obtain an updated VA examination that included range of motion testing of the Veteran's right knee in active and passive range of motion, as well as on weight-bearing and nonweight-bearing, in compliance with Correia v. McDonald, 28 Vet. App. 158 (2016). In April 2021, the Board again remanded this claim to obtain any outstanding treatment records and to accord the Veteran an update VA examination to determine the current severity of his right knee disability following his convalescence period. 

A remand by the Board confers on the claimant a legal right to compliance with the remand order. Stegall v. West, 11 Vet. App. 268, 271 (1998). Compliance with a remand is not discretionary, and failure to comply with the terms of a remand necessities remand for corrective action. Id. Substantial compliance with the remand order, not strict compliance, is required. Donnellan v. Shinseki, 24 Vet. App. 167, 176 (2010); Dyment v. West, 13 Vet. App. 141, 147 (1990). Failure of the Board to ensure compliance with remand instructions constitutes error and warrants the vacating of a subsequent Board decision. Stegall, 11 Vet. App. at 271.

Outstanding treatment records were associated with the claims file in May 2021. In this regard, the Board finds substantial compliance with this portion of the April 2021 Board remand directives. Stegall, 11 Vet. App. at 271. At a May 2021 VA examination, the examiner diagnosed right anterior cruciate ligament reconstructive surgery and right total knee replacement. In responding to the Correia questions, the examiner recorded the active and passive range of motion of the Veteran's right knee. The examiner noted that the Veteran had no pain but did not address weight-bearing and nonweight-bearing or provide range of motion measurements for either of these conditions. The Board finds that this amounts to only a cursory consideration of Correia and that such renders the examination inadequate for rating purposes. Stegall, 11 Vet. App. at 271. 

The April 2021 Board remand noted, and the Board reiterates here, that, during the pendency of the appeal, the rating criteria for evaluating musculoskeletal disabilities under 38 C.F.R. § 4.71a were amended effective February 7, 2021. 85 Fed. Reg. 230 (Nov. 30, 2020). If a law or regulation changes during the course of a claim or an appeal, the version more favorable to the Veteran will apply, to the extent permitted by any stated effective date in the amendment in question. 38 U.S.C. § 5110(g). If the revised version of the regulation is more favorable, the implementation of that regulation under 38 U.S.C. § 5110(g) can be no earlier than the effective date of that change. If the former version is more favorable, VA can apply the earlier version of the regulation for the period prior to, and from, the effective date of the change. 38 U.S.C. § 5110. Therefore, the Board will consider the Veteran's claim under the old criteria prior to February 7, 2021, and both the old and new rating criteria from February 7, 2021. The criteria that is more favorable to the Veteran will be applied. 

Prior to the regulatory change, Diagnostic Code 5055 (knee replacement, prosthesis) states that a 30 percent rating is warranted as a minimum rating for a knee replacement; a 60 percent rating is warranted for knee replacement with chronic residuals consisting of severe painful motion or weakness in the affected extremity; and, a 100 percent rating is warranted for one year following the implantation of prosthesis. The Diagnostic Code states that intermediate degrees of residual weakness, pain of limitation of motion should be rated by analogy to diagnostic codes 5256, 5261, or 5262. 

As of February 7, 2021, under the amended criteria, Diagnostic Code 5055 (knee, resurfacing or replacement, prosthesis) states that the minimum evaluation for a total replacement is 30 percent; a 60 percent rating is warranted for chronic residuals consisting of severe painful motion or weakness in the affected extremity; and a 100 percent rating is warranted for four months following implantation of prosthesis or resurfacing. A note after this Code states that at the conclusion of the 100 percent evaluation period, evaluate resurfacing under diagnostic codes 5256 through 5262; there is no minimum evaluation for resurfacing.

While the May 2021 examiner addressed some symptoms of the Veteran's right knee disability, the examination report does not contain all information required to assess the severity of this disability under the appropriate diagnostic code, including under the new appropriate diagnostic codes. Additionally, no examiner has adequately addressed the level of severity of the Veteran's right knee disability prior to requiring a total knee replacement in November 2018, to include whether his disability was so severe that a total right knee replacement was indicated for the Veteran prior to that date. The July 2017 Board remand noted that the prior VA examinations from September 2010 and January 2014 were inadequate for rating purposes, but the May 2019 VA examination did not retroactively address the severity of the Veteran's right knee disability prior to November 6, 2018. 

On remand, therefore, the nature and severity of the Veteran's total right knee replacement should be adequately assessed for both periods on appeal, and the examination obtained should be compliant with the requirements set out in Correia and the new appropriate diagnostic codes.

Accordingly, this matter is REMANDED for the following action:

Schedule the Veteran for a VA examination to determine the current severity of his service-connected total right knee replacement. The entire claims file, including a copy of this remand, should be made available to, and reviewed by, the examiner. Any indicated tests and studies must be accomplished. All clinical findings found on examination to be associated with these disabilities must be reported in detail, to include, but not limited to, any limitation of motion of the Veteran's right knee and the symptoms required for assessing the Veteran's right knee under the appropriate diagnostic criteria.

The examiner is also asked to provide a retroactive opinion as to the severity of the Veteran's right knee disability prior to November 6, 2018, to include whether his right knee disability was more severe prior to the date the disability required a total knee replacement. 

The examiner should test the range of motion and pain in the Veteran's right knee in active and passive motion and in weight-bearing and nonweight-bearing and should provide the range of motion measurements for such testing using a goniometer. If the examiner is unable to conduct the required testing or concludes that the required testing is not necessary, he or she should clearly explain why that is so.

Also, the examiner should describe any functional limitation due to pain, weakened movement, excess fatigability, pain with use, or incoordination. Additional limitation of motion during flare-ups and after repetitive use due to limited motion, excess motion, fatigability, weakened motion, incoordination, or painful motion must also be noted. If the Veteran describes flare-ups of the pain, the examiner must opine as to whether there would be additional limits on functional ability during flare-ups. All loses of function due to problems such as pain should be equated to additional degrees of limitation of flexion and extension beyond that shown clinically.

Should the examiner state that he or she is unable to offer any such opinion without resorting to speculation based on the fact that the examination was not performed during a flare-up, the examiner is directed to do all that reasonably can be done to become informed before such a conclusion, to include ascertaining adequate informationi.e. frequency, duration, characteristics, severity, or functional lossregarding the Veteran's flare-ups by alternative means.

The examiner is advised that the criteria of Diagnostic Code 5055 were amended, effective February 7, 2021. The examiner must provide a complete examination of the Veteran's right knee in accordance with both the old and new regulations. In this regard, the examiner is asked to address whether the Veteran presents with chronic residuals consisting of severe painful motion or weakness in the affected extremity, and/or whether the Veteran presents with intermediate degrees of residual weakness, pain or limitation of motion to be rated by analogy to diagnostic codes 5256, 5261, or 5262.

The examiner is also advised that the Veteran is competent to report his symptoms and history and that such reports must be acknowledged and considered in formulating any opinion. A clear explanation for all opinions would be helpful, as well as a rationale for all opinions rendered, and a discussion of the facts and medical principles involved would be of considerable assistance to the Board. If the examiner is unable to provide an opinion, he or she should explain why.

No action is required of the Veteran until he is notified by VA. However, he is advised of his obligation to cooperate in ensuring that the duty to assist is satisfied. Kowalski v. Nicholson, 19 Vet. App. 171 (2005). His failure to report for a VA medical examination may impact determinations made. 38 C.F.R. § 3.655. The Veteran also is advised that he has the right to submit additional evidence and argument with respect to this matter. Kutscherousky v. West, 12 Vet. App. 369 (1999). This appeal must be afforded prompt treatment.

 

 

THERESA M. CATINO

Veterans Law Judge

Board of Veterans' Appeals

Attorney for the Board A. Goreham

The Board's decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.