# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-2015

JOEL NEWMAN, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided June 16, 2022)

*Rose Carmen Goldberg*, of San Francisco, California, for the appellant.

*James M. Byrne,* General Counsel; *Mary Ann Flynn*, Chief Counsel; *James B. Cowden*, Deputy Chief Counsel; and *Mark J. Villapando,* all of Washington, D.C., were on the brief for the appellee.

Before GREENBERG, TOTH, AND FALVEY, *Judges.*

PER CURIAM: Generally, former servicemembers are barred from receiving compensation for service-connected disabilities if they were discharged because they were absent without leave (AWOL) from their units for extended periods. 38 C.F.R. § 3.12(c)(6) (2021). There is an exception, however, for persons whom VA deems, per its definition, to have been insane at the time of the offense leading to discharge. 38 C.F.R. § 3.12(b). This case addresses the standard the Board must use when determining whether a veteran qualifies for the insanity exception.

Joel Newman, Marshall Newman's brother, appeals a 2018 Board decision that found Marshall Newman ineligible for compensation benefits due to the character of his discharge. During the pendency of his appeal, Marshall Newman passed away and now his brother Joel has been substituted as appellant. Marshall Newman acknowledged that he received an unfavorable discharge after he was AWOL from his Marine Corps unit during three intervals spanning more than 9,000 days from 1973 until 1999; nonetheless, he contended that he was eligible for veterans benefits because he was insane—as VA defines that term—when he first went AWOL. The Board disagreed and found that the evidence did not support such a finding. The appellant argues that the Board erred when it required his brother to prove his insanity by a preponderance of the evidence.

Both sides agree that the benefit of the doubt standard, codified at 38 U.S.C. § 5107(b), serves as the governing standard for evaluating whether a claimant meets VA's definition of insanity. We brought this case to panel to acknowledge this and put to rest any question about the standard of review when evaluating veteran status. Here, we state that—save perhaps in clear and unmistakable evidence cases as discussed later—the benefit of the doubt standard governs in all cases where VA must determine whether a claimant possesses veteran status. Because the Board failed to apply this standard here, we remand.

## I. BACKGROUND

Marshall Newman joined the Marine Corps in 1973 and went AWOL from his unit on three separate occasions. First, in 1974, he was convicted by civilian authorities of attempted housebreaking after leaving his unit and was incarcerated. Upon release, he was convicted at court-martial for his absence; however, he sought to remain with the Marines and was retained on active duty following his conviction. His second AWOL period occurred from January 1975 to June 1981. Shortly after returning, Mr. Newman ran off once again—his third AWOL period—and remained apart from his Marine unit for 15 years. Upon returning in 1999, he was discharged under other than honorable conditions.

In August 2012 Mr. Newman filed a compensation claim seeking service connection for a nervous condition. The regional office (RO) found him ineligible for VA benefits because he was discharged after having been AWOL for longer than 180 days and, therefore, was barred from receiving compensation under VA regulations. He appealed, arguing that he was insane and therefore exempt from the rule precluding compensation for servicemembers who were AWOL for more than 180 days. *See* 38 C.F.R. § 3.12(b). The Board denied his claim in 2016 and he appealed to this Court. In September 2017, Mr. Newman and the Secretary agreed to remand the case for the Board to explain whether a medical opinion was necessary to adjudicate the claim.

In February 2018 the Board issued the decision currently on appeal, finding that a medical opinion wasn't necessary. The decision concluded that his discharge barred him from receiving compensation benefits due to repeated absences from service. Next, it considered the two applicable exceptions—"compelling circumstances" and insanity—and stated that Mr. Newman needed to show by a preponderance of the evidence that he was insane at the time of the offenses that resulted in discharge. The Board determined that Mr. Newman did not qualify for either

exception. Thus, the Board ruled that Mr. Newman's discharge precluded him from establishing veteran status and so he was not eligible for compensation benefits. This appeal followed.

## II. ANALYSIS

### A. *The Legal Background of Veteran Status*

Character of discharge (COD) determinations play an integral role in the veterans benefits system as VA uses them to establish veteran status. *See* 38 U.S.C. § 101(2). Establishing veteran status is a prerequisite for receiving disability compensation and it is the claimant's burden to establish veteran status. *Donnellan v. Shinseki*, 24 Vet.App. 167, 172 (2010).

Our caselaw has shifted over time about the governing standard required to prove veteran status: Initially, we required potential claimants to prove veteran status—that is, eligibility for compensation benefits—by a preponderance of the evidence. So, in *Augilar v. Derwinski*, 2 Vet.App. 21, 23 (1991), we ruled that a claimant seeking to reopen a claim that had been denied for lack of veteran status had to first prove veteran status by a preponderance of the evidence. *Augilar* endorsed the view that Congress had reserved the more lenient "benefit of the doubt" standard for veterans and, thus, veteran status had to be proven before the standard could apply. This view prevailed for nearly a decade and was reaffirmed in *Laruan v. West*, 11 Vet.App. 80, 84, 85 (1998), which held that "unless a claimant first carries the initial burden of establishing status as a veteran or veteran status for the person upon whose military service the desired benefits are predicated, the laws administered by the Secretary and the resources of the VA are not applicable or available."

The U.S. Court of Appeals for the Federal Circuit in *D'Amico v. West*, 209 F.3d 1322, 1326-27 (Fed. Cir. 2000), noted that this Court's interpretation of 38 U.S.C. § 5108 (reopening claims) could be traced to *Aguilar* and then overruled *Laruan* and its progeny, holding that the new and material evidence requirement in section 5108 applied to the reopening of claims that were disallowed for any reason, including because the claimant's veteran status was not established. It also found no support in the 1988 Veterans' Benefits Improvement Act legislative history for this Court's interpretation of 38 U.S.C. § 5107 (duty to assist for well-grounded claims and benefit of the doubt) and section 5108. *Id*. at 1327. But the Federal Circuit's holding did not fully settle the matter, as there remained uncertainty about whether it covered all veteran-status

3

questions or only attempts to reopen claims under section 5108 that had been denied for lack of veteran status.

Since then, our caselaw has offered mixed messages about the reach of the benefit of the doubt standard in evaluating veteran status. We applied the benefit of the doubt standard in cases such as *Frasure v. Principi*, 18 Vet.App. 379, 385 (2004), *Gardner v. Shinseki*, 22 Vet.App. 415, 421 n. 5 (2009) (citing *D'Amico* in a footnote for the proposition that it "overrul[ed] *Laruan . . .* and other cases holding that claimant[s] must show 'veteran' status by preponderance of evidence before benefitting from statutes reserved for veterans"), and *Donnellan*, 24 Vet.App. at 175 (holding that "the benefit of the doubt standard applies to the question of veteran status," where a national guardsman sought benefits based on aggravation of a preexisting disability during active duty for training (ACDUTRA)). But in *Robertson v. Shinseki*, 26 Vet.App. 169, 174 (2013), we reverted to the preponderance of the evidence standard when reviewing a Board decision finding no clear and unmistakable error (CUE) in a 1977 RO decision. *Id.* (citing *Holmes v. Brown*, 10 Vet.App. 38, 40 (1997), for the proposition that "[a] person seeking VA benefits must first establish by a preponderance of the evidence that the service member, upon whose service such benefits are predicated, has attained the status of veteran," which had cited *Aguilar* for that holding). Several of our cases since then have cited to *Robertson* and *Holmes* for the proposition that the preponderance of the evidence standard is appropriate for assessing a claimant's veteran status. *See, e.g., Key v. Wilkie*, 2020 WL 4932368, at * 2 (Vet. App. Aug. 24, 2020); *Cristino v. McDonough*, 2021 WL 747745, at * 3 (Vet. App. Feb. 26, 2021).

We called Mr. Newman's case to panel to acknowledge this discrepancy and put to rest any question about the standard of review when evaluating veteran status. We hold that the benefit of the doubt standard governs in all cases[1] where VA must determine whether a claimant possesses veteran status. This is so because to find otherwise would create different standards for different claimants. For example, in *Donnellan*, 24 Vet.App. at 175, the Court held that the benefit of the doubt standard applied to claimants trying to show injury on ACDUTRA and in *D'Amico*, 209 F.3d at 1326-27, the Federal Circuit found that claimants whose benefits were denied because they had not established veteran status could provide new and material evidence to reopen those claims, which is an evidentiary advantage similar to the benefit of doubt standard. To now hold that the preponderance of the evidence standard applies to Mr. Newman's situation—that is, where a

---

[1] Perhaps with the exception of CUE, as discussed below.

4

claimant was on active duty, went AWOL, and was trying to show that he met the insanity exception—when precedent allows other claimants to satisfy less stringent burdens in pursuing their claims seems illogical. Further, *D'Amico*, 209 F.3d at 1326-27, provides helpful guidance in this matter given that the Federal Circuit noted that *Lauran*'s finding—that the evidentiary benefit in section 5107 (benefit of the doubt) was reserved for those that had already met the initial burden of establishing veteran status—was not supported by the legislative history it cited. Finally, the Secretary concedes that the benefit of the doubt standard under section 5107 applies when determining whether veteran status has been established. October 2021 Notice of Change in Position at 1 (citing *Donnellan,* 24 Vet.App. at 174-75, and § 3.102, which provides that "[w]hen, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant").

And, as to *Robertson*, we note the specific context of that case, which involved CUE. The traditional practice has been to review CUE according to the caselaw extant at the time of the underlying decision and so *Robertson* employed the preponderance of the evidence standard in its CUE determination because that's how veteran status was established at the time of the prior decision at issue. *See Augilar*, 2 Vet.App. at 23. Of course, it must also be noted that the Supreme Court is currently reviewing the propriety of the Federal Circuit's caselaw holding that CUE cannot exist where the adjudicator interprets the law according to precedent that existed at the time of the prior decision but was later jettisoned. *George v. McDonough*, 991 F.3d 1227 (Fed. Cir. 2021), *cert granted* 142 S. Ct. 858 (Jan. 14, 2022). For now, we need only mention that CUE cases can present complications that are not germane here.

### B. Character of Discharge (COD) Determinations

With that background in mind, we now turn to the current law surrounding COD determinations. VA and the Department of Defense (DoD) use different systems for classifying and categorizing discharges, although their respective terminologies are similar enough to cause a measure of confusion. The DoD issues five categories of discharge based on the character of a person's service: (1) honorable discharge; (2) general discharge; (3) other than honorable discharge; (4) bad conduct discharge; and (5) dishonorable discharge. 53A Am. Jur. 2d Military and Civil Defense § 159. The first three constitute administrative discharges, while the last two are punitive discharges and only issue after a conviction at court-martial.

VA has a very different system for characterizing discharge from DoD. Significantly, VA recognizes only *two categories* of discharge—dishonorable and other than dishonorable—when determining eligibility for VA benefits. The reason VA uses the ungainly phrase "other than dishonorable" is straightforward: Congress used this exact phrase to define the term "veteran," for purposes of eligibility for VA benefits. Specifically, 38 U.S.C. § 101(2) defines a veteran as any "person who served in the active military, naval, air, or space service and who was discharged or released under conditions other than dishonorable."

DoD's COD determination is not binding on VA, unless a veteran is discharged under honorable conditions, in which case veteran status is assured. *See* 38 C.F.R. § 3.12(a). For all other classifications, VA performs its own COD determinations by examining the underlying conduct that led to a veteran's discharge; in so doing, the Agency uses both statutory and regulatory provisions to determine whether a veteran's discharge was under conditions other than dishonorable. *See generally* 38 U.S.C. § 5303; 38 C.F.R. § 3.12.

Because VA relied on § 3.12 to find that Mr. Newman could not establish veteran status, our analysis will also focus on that regulation. Section 3.12, entitled Character of Discharge, reiterates that a dishonorable discharge bars former servicemembers from receiving benefits. Subsection (b) provides that "discharge or release from service under one of the conditions specified in this section is a bar to the payment of benefits unless it is found that the person was insane at the time of committing the offense causing such discharge or release or unless otherwise specifically provided." § 3.12(b). VA defines insanity, for COD determinations, as a person:

> who, while not mentally defective or constitutionally psychopathic, . . . exhibits, due to disease, a more or less prolonged deviation from his normal method of behavior; or interferes with the peace of society; or who has so departed . . . from the accepted standards of the community . . . as to lack the adaptability to make further adjustment to the social customs of the community in which he resides."

38 C.F.R. § 3.354(a) (2021).

And § 3.12(c)(6) bars the payment of benefits to former service members who were discharged for refusing to perform their duties, were sentenced to be discharged by a general court-martial, or resigned a commission as an officer for the good of the service. It further explains that benefits are unavailable for service members who were discharged for desertion or for being AWOL for at least 180 days unless "there are compelling circumstances to warrant the prolonged

unauthorized absence." § 3.12(c)(6)(i)-(iii) (listing factors for determining whether compelling circumstances exist to justify the servicemember's unauthorized absence).

Here, because the appellant's arguments focus on the insanity exception, Appellant's Brief (Br.) at 9-26, we will also focus our analysis on that exception. And we note that the appellant has the burden to show that his brother was insane at the time he committed the offense that led to his discharge. *See Struck v. Brown*, 9 Vet.App. 145, 153-54 (1996). However, he does not have to prove that insanity caused his brother to commit the act that led to his discharge. *Id.*

### C. Application to Mr. Newman's Case

Mr. Newman received an "other than honorable" discharge from the DoD. VA determined that he was barred from receiving benefits under § 3.12(c)(6) because he went AWOL for a period of greater than 180 days. For this reason, he could not receive benefits unless one of the two exceptions applies: insanity under § 3.12(b) or compelling circumstances under § 3.12(c)(6). The appellant claims that his brother's 1974 arrest for housebreaking demonstrates that he was insane at the time that he went AWOL. Further, he argues that the Board provided an inadequate statement of reasons or bases to support its determination that this behavior did not constitute an "interfere[ence] with the peace of society" as that phrase is used in VA's insanity definition.

The appellant first asserts that the Board applied the wrong standard when it determined that his brother was not insane when he went AWOL. Specifically, he contends that the Board required the veteran to prove his insanity by a preponderance of the evidence when it should have applied the more lenient "benefit of the doubt" standard. *See Donnellan*, 24 Vet.App. at 175 (explaining the difference between the standards).

While the Board acknowledged *Donnellan's* holding "that the benefit of the doubt standard applies to the question of veteran status," it did not apply that standard when it addressed Mr. Newman's claim that he was insane at the time he went AWOL. *See* R. at 7. Instead, it required Mr. Newman to "show by a preponderance of the evidence . . . that he was insane at the time of the offenses which resulted in his discharge from service." R. at 11 (citing *Struck*, 9 Vet.App. at 152-54). But, as stated, the benefit of the doubt standard, rather than the preponderance of the evidence standard, is the correct standard when determining whether a claimant has established veteran status. Remand is warranted where the Board applies an incorrect legal standard, so the Court vacates the Board's finding that Mr. Newman was not insane at any of the times that he was

7

AWOL or at any other times relevant to the character of his discharge, and remands the issue for readjudication. *See Delrio v. Wilkie*, 32 Vet.App. 232, 239-40 (2019).

## D. Reasons or Bases

While remand is warranted for the Board to apply section 5107's benefit of the doubt standard, the Court also concludes that the Board's statement of reasons or bases is deficient with respect to the finding that Mr. Newman was not insane. The Board must support any material finding—which this clearly is, as his eligibility turns on it—with a statement of reasons or bases that informs the claimant of the precise reasons for its decisions and is sufficiently detailed to facilitate this Court's review. *Donnellan*, 24 Vet.App. at 171.

The Board's rationale focused exclusively on Mr. Newman's mental health history, concluding that the "evidence weighs against a finding that the Veteran has or has had a psychosis" and that the weight of the evidence does not establish a "longstanding or repeated mental disorder." R. at 12. Yet, as discussed, VA's definition of insanity does not focus solely on a claimant's mental health; neither of the Board's rationales appears in that definition. *See Beck v. West*, 13 Vet.App. 535, 539 (2000). Thus, the Board should have discussed whether Mr. Newman's 1974 housebreaking conviction constitutes evidence of "interfere[nce] with the peace of society," which is one of the standards set out in the relevant regulation. *See* § 3.54(a). Because it did not do so, the Board's statement is insufficient. *See Donnellan*, 24 Vet.App. at 171; *cf. Gardner*, 22 Vet.App. at 420-21 (vacating and remanding a Board decision that addressed common law insanity rather than VA's regulatory definition).

On remand the Board should evaluate whether Mr. Newman's 1974 housebreaking conviction establishes that he was insane, under VA's definition, using the benefit of the doubt standard in section 5107(b), when he went AWOL.

Additionally, per *Quirin v. Shinseki*, 22 Vet.App. 390, 395 (2009), the Board should consider the relevance of in-service notations of nervousness, dizziness, and depression, as well as difficulties breathing and sleeping, and that Mr. Newman reported that his "brain stays numb, out of balance." R. at 212 (November 1973); R. at 228-29 (June 1981); R. at 258-59, 553 (October 1999). The Board found that Mr. Newman had not submitted "any evidence whatsoever that he was insane or had any mental health issues at the times in which he decided to absent himself from the Marine Corps." R. at 11 (citing to September 2013, April 2016, and January 2018 private medical records). Later, when discussing whether he had a neurological issue, the Board

determined that September and November 1973 service treatment records showing a hyperventilation diagnosis and breathing problems when Mr. Newman got nervous were insufficient to show an in-service mental health problem or that he was insane at the time he went AWOL in January 1974. R. at 13. But the Board does not explain why the in-service symptom notations are insufficient to show a possible mental health problem. On remand, the Board should adequately discuss those symptoms.

Finally, the Secretary concedes that remand is warranted because Mr. Newman had identified private medical records and reported receiving Social Security benefits and the Board did not discuss the relevance of those records or whether they had a reasonable possibility of substantiating the claim. Secretary's Br. at 4-6 (also stating that, although VA was not required to obtain Mr. Newman's court-martial transcript, the appellant was free on remand to explain to the Board why this document was relevant). Thus, on remand the Board should consider the relevance of those private medical records and any records related to Social Security benefits he received, as well as Mr. Newman's court-martial transcript.

## III. CONCLUSION

Accordingly, the Board's February 15, 2018, decision is VACATED and REMANDED for readjudication consistent with this decision.